1   Christopher W. Arledge (Bar No. 200767)
    Email: carledge@onellp.com
2   Jenny S. Kim (Bar No. 282562)
    Email: jkim@onellp.com
3   **ONE LLP**
    4000 MacArthur Blvd.
4   East Tower, Suite 500
    Newport Beach, CA 92660
5   Telephone:   (949) 502-2870
    Facsimile:   (949) 258-5081
6
7   Attorneys for Defendant,
    Helix Environmental and Strategic Solutions
8
9
10              **UNITED STATES DISTRICT COURT**
11            **SOUTHERN DISTRICT OF CALIFORNIA**
12

| | |
|---|---|
| 13 HELIX ENVIRONMENTAL PLANNING, INC., a California corporation, | Case No. 18-cv-02000-AJB-NLS |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT HELIX ENVIRONMENTAL AND STRATEGIC SOLUTIONS' MOTION TO SET ASIDE DEFAULT PURSUANT TO FED. R. CIV. P. 55(c)** |
| v. | |
| HELIX ENVIRONMENTAL AND STRATEGIC SOLUTIONS, a California corporation, | |
| Defendant. | Date:      May 30, 2019 Time:      2:00 p.m. Courtroom:  4A |

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to Rule 55(c) of the Federal Rules of Civil Procedure, Defendant Helix Environmental and Strategic Solutions ("Defendant") moves for relief from the entry of default entered against it in this action. (*See* Dkt. No. 6.) Defendant seeks relief on the grounds that the default was entered as a result of misconduct by counsel for Plaintiff Helix Environmental Planning, Inc. ("Plaintiff") and/or excusable neglect, and the equities weigh in favor of setting aside the default. As set forth in its proposed Answer (*see* Declaration of Chris Arledge ("Arledge Decl.") Ex. 1), Defendant has meritorious defenses to all the claims asserted in the Complaint. Further, granting the relief requested will not prejudice Plaintiff and will allow for resolution of this dispute on the merits.

## I.    STATEMENT OF FACTS

On August 27, 2018, Plaintiff filed the Complaint. Almost immediately thereafter, on August 31, 2018, Defendant's counsel Chris Arledge contacted Plaintiff's counsel Gary Eastman by phone and email to discuss the case. (Arledge Decl. Ex. 2, at 8.) Though Mr. Arledge generally responded to Mr. Eastman's messages within hours, due to Mr. Eastman's delays, counsel had their first telephonic conference on September 12, 2018, during which they discussed settlement. (*Id.*, at 6.)

On October 19, 2018—more than a month later—Plaintiff responded with a settlement proposal and requested a waiver of service pursuant to Rule 4(d). (*Id.*, at 5.) Mr. Eastman specifically represented that the waiver would allow the parties to negotiate settlement further and hold in abeyance Defendant's duty to answer the Complaint: "[M]y date of Service for the Complaint is coming up; are you willing to accept service of the Complaint pursuant to a Rule 4 Waiver, thus allowing 60 days ***to further discussions of the resolution of the matter without your client having to file an Answer or otherwise respond***?" (*Id.* (emphasis added).) Mr. Arledge agreed to waive service—again, within hours. (*Id.*, at 4-5.) Plaintiff filed the waiver on

1   October 25, 2018, making Defendant's deadline to respond to the Complaint

2   December 24, 2018.

3          The parties continued to discuss settlement until well past the response date.

4   While waiting for Plaintiff to counter Defendant's most recent proposals, Mr.

5   Arledge requested a further extension on or before December 24, 2018. (Arledge

6   Decl. ¶ 13.) Opposing counsel never responded to that request. (*Id.*) On January 8,

7   2019, Mr. Eastman finally responded with a letter that did not address any of the

8   issues the parties had discussed in connection with a potential resolution, and

9   instead demanded immediate capitulation by Defendant on all issues. (Arledge Decl.

10  Ex. 3.) Mr. Arledge attempted to reach out to Mr. Eastman on January 18 and 24,

11  2019, and left voicemail messages and emails in an attempt to understand Plaintiff's

12  position. (Arledge Decl. ¶¶ 16-21 & Ex. 4-5.) Mr. Eastman ignored the messages

13  and filed the request for entry of default on January 18, 2019, which was not even

14  served on Defendant.[1]

15         Upon Defendant's inquiry as to whether litigation would be necessary (*see*

16  Arledge Decl. Ex. 4, at 1 ("Let's talk one more time before committing to

17  litigation."), and further, whether Plaintiff would stipulate to set aside the default

18  (*see* Arledge Decl. Ex. 2, at 1-2), Mr. Eastman responded on January 30, 2019, that

19  "absent your client's unequivocal abandonment of the HELIX mark, then we will

20  rely on the Default, and move forward accordingly." (*Id.*, at 1.) Shortly thereafter,

21  Defendant filed this Motion.

22  **II.   <u>ARGUMENT</u>**

23         A trial court has broad discretion and significant procedural flexibility to set

24  aside a clerk's entry of default. *Brady v. United States*, 211 F.3d 499, 504 (9th Cir.

25  2000) ("[A] district court's discretion is especially broad when . . . it is entry of

26

27  _____

28  [1] The proof of service purports to have served Defendant's counsel through ECF,
    but the proof is incorrect because Defendant had not yet appeared in the case.

1   default that is being set aside rather than default judgment[.]" (internal quotations

2   omitted)). Rule 55(c) provides that a Court may set aside an entry of default for

3   "good cause" shown. Fed. R. Civ. P. 55(c). The standard for good cause under Rule

4   55 is the same as the grounds for relief under Rule 60(b). *Franchise Holding II, LLC*

5   *v. Huntington Restaurants Grp., Inc.,* 375 F.3d 922, 926 (9th Cir. 2004). Rule 60(b)

6   provides that the court may relieve a party from a final judgment upon a showing of,

7   *inter alia*, "mistake, inadvertence, surprise, or excusable neglect" or "fraud (whether

8   previously called intrinsic or extrinsic), misrepresentation, or misconduct by an

9   opposing party." Fed. R. Civ. P. 60(b)(1) & (3).

10       In addition, the "good cause" standard considers "(1) whether [defendant]

11   engaged in culpable conduct that led to the default; (2) whether [defendant] had a

12   meritorious defense; or (3) whether reopening the default judgment would prejudice

13   [plaintiff]." *Franchise Holding II*, 375 F.3d at 926. "[I]t is well established that the

14   good cause required by Fed. R. Civ. P. 55(c) for setting aside entry of default poses

15   a lesser standard for the defaulting party than the excusable neglect which must be

16   shown for relief from judgment under Fed. R. Civ. P. 60(b)." *Dennis Garberg &*

17   *Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 775 n.6 (10th Cir. 1997). *See*

18   *also E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990);

19   *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 194 (6th

20   Cir. 1986); *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981).

21       Here, Defendant has good cause for requesting that the Court set aside the

22   entry of default. First, Plaintiff's counsel engaged in misconduct and had made

23   misleading representations that the parties were engaged in settlement discussions

24   when Plaintiff improperly requested entry of default. Second, even if Plaintiff's

25   surprise request for an entry of default did not rise to the level of misrepresentation

26   or misconduct, Defendant's counsel relied on representations by Plaintiff's counsel

27   that default would not be entered pending the parties' settlement discussions; this

28   constitutes mistake or excusable neglect. Third, Defendant engaged in no culpable

conduct, as it participated in good faith settlement discussions with the expectation that litigation could be avoided, and immediately moved to set aside the default when Plaintiff made clear that litigation was not to be avoided. Fourth, Defendant has meritorious defenses, including the defense that Plaintiff does not have protectable trademark rights. Fifth, Plaintiff is not prejudiced if the default is replaced with an adjudication on the merits.

## A.    Default Was Entered as a Result of Misconduct by Plaintiff's Counsel

A default judgment may be set aside on the basis of the opposing counsel's misconduct or "extrinsic" fraud where the opposing counsel induced a party not to make an appearance in the case. Such inducement includes making false representations regarding settlement.

> Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practised on him by his opponent, as by keeping him away from court [or] *a false promise of a compromise* . . . these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing.

*United States v. Throckmorton*, 98 U.S. 61, 65-66 (1878) (emphasis added).

Here, by reason of Plaintiff's counsel's false and misleading promises of ongoing settlement discussions, coupled with his sudden non-responsiveness on the eve of Defendant's deadline to answer, Defendant was deprived of an opportunity to participate in a fair adversarial process. Plaintiff's counsel initiated settlement discussions with the explicit understanding that Plaintiff would not require Defendant to file an answer or engage in expensive litigation while the discussions were pending: Plaintiff's counsel offered that waiving service would "allow[] 60 days *to further discussions of the resolution of the matter without your client having to file an Answer or otherwise respond*[.]" (Arledge Decl. Ex. 2, at 5 (emphasis added).) When Defendant's counsel requested a renewal of that same condition at a time when Plaintiff was considering Defendant's settlement offer, but

had not yet made a counteroffer, Plaintiff's counsel neither accepted nor refused the request. He simply, and inexplicably, ceased to respond. Plaintiff ultimately did not make its counteroffer—that Defendant capitulate in all respects—until after Defendant's deadline to answer the Complaint had passed, and its counsel evaded all attempts by Defendant's counsel to understand Plaintiff's position both with respect to the substance and procedural status of the case.

In short, Plaintiff's counsel did everything in his power—whether through an outright false promise of compromise or a failure to clarify that there would be no compromise—to induce Defendant not to make an appearance in the case while settlement negotiations were pending. Under the circumstances, the default entered against Defendant was a result of Plaintiff's counsel's misconduct or misrepresentation and should be vacated.

## B.  Default Was Entered as a Result of Mistake or Excusable Neglect

In the alternative, even if Plaintiff's counsel did not engage in conduct that arises to the level of extrinsic fraud, the default should still be set aside because it was entered as a result of mistake or excusable neglect. In *Pioneer Investment Services v. Brunswick Associates*, the United States Supreme Court stated that, "for purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the ***failure to comply with a filing deadline*** is attributable to negligence." 507 U.S. 390, 394 (1993) (emphasis added). In *Briones v. Riviera Hotel & Casino,* 116 F.3d 379 (9th Cir. 1997), the Ninth Circuit adopted the same framework for excusable neglect as *Pioneer*:

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the [party], the length of the delay and its potential impact on the judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* at 381 (quoting *Pioneer*, 507 U.S. at 395).

1    Here, the default was caused by Defendant's failure timely to answer the

2    Complaint based on a mistaken understanding of the status of parties' settlement

3    discussions. Defendant did not try to evade the lawsuit or engage in bad faith tactics,

4    and on the contrary generally responded to emails from Plaintiff's counsel within

5    hours. Unlike Plaintiff, Defendant never caused or invited uncertainty about its

6    willingness to negotiate a settlement. Defendant committed only one error in not

7    filing its answer on December 24, 2018, after Plaintiff failed to agree to extend that

8    deadline. Defendant apologizes to the Court for that error, and submits that its

9    oversight is the kind of failure to comply with a filing deadline that courts have

10   recognized as excusable neglect.

11   In granting relief from default here, there is no danger of prejudice to

12   Plaintiff; the short passage of time did not create a loss of evidence or increased

13   difficulty in prosecuting their claims against Defendant. The length of Defendant's

14   delay in bringing this motion is *de minimis*. Indeed, Defendant filed this motion for

15   relief as soon as possible after learning of the entry of default and Plaintiff's

16   unwillingness to stipulate to setting aside the default. Any delay that has occurred

17   will have little or no effect on these judicial proceedings.

18   Rather, the danger of prejudice lies in *denying* relief. If the default is not

19   relieved, Defendant is at risk of having judgment entered against it on allegations

20   that Defendant has not had an opportunity to defend. As set forth in the proposed

21   Answer, attached to the concurrently filed Declaration of Chris Arledge, Defendant

22   has good faith and meritorious legal bases for asserting a complete defense to all

23   claims. (Arledge Decl. Ex. 1.) Plaintiff's rights in the asserted mark are subject to

24   either no protection or very narrow protection because "Helix" is a geographic term.

25   Moreover, because the parties are in different industries, and Plaintiff's customer

26   base consists of entities that are large and sophisticated, there is little or no

27   likelihood of confusion.

28

Taking into account all the relevant circumstances, the default should be set aside because the failure to file an answer to the Complaint was caused by mistake or excusable neglect.

## C.   An Application of Equitable Principles Weighs in Favor of Relieving Default

The remaining "good cause" factors under *Franchise Holding II* are similar to the equitable factors for determining whether the defaulting party's neglect was excusable. For the same reasons discussed above, all the equitable factors weigh in favor of setting aside the default.

First, Defendant engaged in no culpable conduct that led to the default. The failure to comply with the deadline for answer the Complaint was not the result of any dilatory tactics by Defendant, but rather a good faith reliance on Plaintiff's counsel's misrepresentations, or at the very least, a misunderstanding regarding the status of settlement negotiations and their effect on the litigation. In fact, to the extent litigation has been delayed since the Complaint was filed in August 2018, most of that delay must be attributable to Plaintiff: Plaintiff itself requested the extension to Defendant's deadline to file an answer with the express goal that that parties have additional time to discuss alternatives to litigation. What little delay that may have occurred that was not directly authorized by Plaintiff is limited to the one month between December 24, 2018, and January 18, 2019, when Defendant was trying to make contact with Plaintiff's nonresponsive counsel. Defendant engaged in no culpable conduct.

Second, Defendant has meritorious defenses that should be tried to resolve the dispute. "It is well settled that the Federal Rules of Civil Procedure are to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits and to dispense with technical procedural problems." *Rodgers v. Watt*, 722 F.2d 456, 459 (9th Cir. 1983) (quoting *Staren v. Am. Nat'l Bank & Trust Co. of Chicago*, 529 F.2d 1257, 1263 (7th Cir. 1976)). Thus, default judgments are

disfavored. *United States v. Distribuidora Batiz CGH, S.A. De C.V.,* 2009 WL 2487971, at \*4 (S.D. Cal. Aug. 10, 2009) (quoting *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986)). Defendant should have an opportunity to participate in a fair adversarial process and present the defenses set forth in the proposed Answer, including the defenses that the asserted trademark is invalid and that there is little or no likelihood of confusion.

Finally, Plaintiff will not be prejudiced if the default is set aside and the case is litigated on the merits. "It should be obvious why merely being forced to litigate on the merits cannot be considered prejudicial for purposes of lifting a default judgment." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001) (overruled on other grounds). Since "vacating the default judgment merely restores the parties to an even footing in the litigation," *id.*, if Plaintiff has meritorious claims, it should welcome setting aside the default as much as Defendant does.

In short, there are no equities weighing against granting relief. Default here does not serve any equitable goal of sanctioning the defendant for bad conduct or making the plaintiff whole for prejudice suffered due to the defendant's fault.

## III.   CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court set aside the Clerk's entry of default and permit Defendant to file an answer to the Complaint.

Dated:  February 7, 2019          **ONE LLP**

By: /s/ Christopher W. Arledge
      Christopher W. Arledge
      Jenny S. Kim
      Attorneys for Defendant,
      Helix Environmental and Strategic
      Solutions

1

## CERTIFICATE OF SERVICE

2          I certify that on February 7, 2019, the foregoing document was electronically

3    filed with the Clerk of the Court using the CM/ECF system, which will send

4    electronic notification of such filing to the CM/ECF participant(s) noted below:

5

6    Gary L. Eastman
     EASTMAN & MCCARTNEY, LLP
7    401 West A Street, Suite 1785
     San Diego, CA 92101
8    Email: gary@eastmanmccartney.com

9    *Attorneys for Plaintiff,*
     *Helix Environmental Planning, Inc.*
10

11

12

13                                         /s/ Christopher W. Arledge
                                           Christopher W. Arledge
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28