Christopher W. Arledge (Bar No. 200767)
Email: carledge@onellp.com
Jenny S. Kim (Bar No. 282562)
Email: jkim@onellp.com
**ONE LLP**
4000 MacArthur Blvd.
East Tower, Suite 500
Newport Beach, CA 92660
Telephone:  (949) 502-2870
Facsimile:   (949) 258-5081

Attorneys for Defendant,
Helix Environmental and Strategic Solutions

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELIX ENVIRONMENTAL PLANNING, INC., a California corporation,<br><br>             Plaintiff,<br><br>      v.<br><br>HELIX ENVIRONMENTAL AND STRATEGIC SOLUTIONS, a California corporation,<br><br>             Defendant. | Case No. 18-cv-02000-AJB-NLS<br><br>**DEFENDANT HELIX ENVIRONMENTAL AND STRATEGIC SOLUTIONS' OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**<br><br>Date:         May 30, 2019<br>Time:        2:00 p.m.<br>Courtroom: 4A |

## I. INTRODUCTION

Helix Environmental Planning, Inc.'s ("Plaintiff") Motion for Entry of Default Judgment against Defendant Helix Environmental and Strategic Solutions ("Defendant") is not only premature, but entirely unjustified. First, the Motion is procedurally premature because it may be mooted if the Court grants Defendant's motion to set aside default. (*See* Dkt. No. 9.) Second, the Motion is substantively deficient because it does not address or apply the relevant law for the relief it seeks; most significantly, it offers no argument as to why the draconian remedy of a permanent injunction should be granted. Accordingly, Defendant respectfully requests that the Court deny Plaintiff's Motion in its entirety. In the alternative, Defendant requests that the Court defer any hearing or ruling on the Motion until after it has decided Defendant's pending motion to set aside default.

## II. STATEMENT OF FACTS

On August 27, 2018, Plaintiff filed the Complaint. On August 31, 2018, Defendant's counsel Chris Arledge contacted Plaintiff's counsel Gary Eastman by phone and email to discuss the case. (Declaration of Christopher W. Arledge ("Arledge Decl.") Ex. 1, at 8.) On October 19, 2018, Mr. Eastman emailed a settlement proposal and specifically represented that a waiver of service would allow the parties to negotiate settlement further and hold in abeyance Defendant's duty to answer the Complaint: "[M]y date of Service for the Complaint is coming up; are you willing to accept service of the Complaint pursuant to a Rule 4 Waiver, thus allowing 60 days ***to further discussions of the resolution of the matter without your client having to file an Answer or otherwise respond***?" (*Id.* (emphasis added).) Mr. Arledge agreed to waive service, making Defendant's deadline to respond to the Complaint December 24, 2018. (*Id.*, at 4-5.)

The parties continued to discuss settlement until well past the response date. While waiting for Plaintiff to counter Defendant's most recent proposals, Mr. Arledge requested a further extension on or before December 24, 2018. (Arledge

Decl. ¶ 12.) Opposing counsel never responded to that request. (*Id.*) On January 8, 2019, Mr. Eastman finally responded with a letter that did not address any of the issues the parties had discussed in connection with a potential resolution, and instead demanded immediate capitulation by Defendant on all issues. (Arledge Decl. Ex. 2.) Mr. Arledge attempted to reach out to Mr. Eastman on January 18 and 24, 2019, and left voicemail messages and emails in an attempt to understand Plaintiff's position. (Arledge Decl. ¶¶ 15-20 & Exs. 3-4.) Mr. Eastman ignored the messages and filed the request for entry of default on January 18, 2019.

Upon Defendant's inquiry as to whether litigation would be necessary (*see* Arledge Decl. Ex. 3, at 1 ("Let's talk one more time before committing to litigation.")), and further, whether Plaintiff would stipulate to set aside the default (*see* Arledge Decl. Ex. 1, at 1-2), Mr. Eastman responded on January 30, 2019, that "absent your client's unequivocal abandonment of the HELIX mark, then we will rely on the Default, and move forward accordingly." (*Id.*, at 1.) Plaintiff did not indicate when it intended to file a motion for default judgment.

While Defendant was preparing its motion to set aside default, Plaintiff filed its Motion on February 4, 2019. Defendant filed its motion to set aside default on February 7, 2019. On February 8, 2019, Defendant's counsel Jenny Kim reached out to Mr. Eastman to inquire as to whether the parties could stipulate to a briefing schedule that would allow Defendant's motion to be heard first, potentially conserving the parties' and the Court's resources if Defendant's motion is granted. (Declaration of Jenny Kim ("Kim Decl.") ¶ 2.) Plaintiff refused to stipulate either to expedite Defendant's motion, or to continue or withdraw Plaintiff's Motion. (*Id.* at ¶ 3.)

## III. <u>ARGUMENT</u>

"Our starting point is the general rule that default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). The Court may,

however, in its discretion enter default judgment against a party who fails to plead or defend a case. Fed. R. Civ. P. 55(b)(2). In exercising its discretion, the Court may consider the seven factors outlined in *Eitel*: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the policy favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72.

Plaintiff's Motion does not adequately address the *Eitel* factors, and certainly does not overcome the general rule disfavoring default judgment. Moreover, Plaintiff does not cite sufficient legal authority and provides no factual support that the Court may grant the relief it seeks. Plaintiff's Motion should be denied.

### A.     *Eitel* Factor 1: Prejudice to Plaintiff

Regarding the first *Eitel* factor, Plaintiff identifies two points of potential prejudice: (1) Plaintiff's "reputation and profits are continuously harmed by Defendant's use of Helix's trade name in the same geographic region for the same or similar services"; and (2) "Defendant's conduct thus far suggests that in the absence of default judgment, Defendant is likely to continue to neglect and delay the present proceedings, prolonging Defendant's infringement of Helix's mark, and causing significant ongoing harm to both Helix and the public" (Mot.[1] 5-6)—which is essentially a rephrasing of the first point.

It is demonstrably untrue that Defendant is likely to delay the proceedings. As set forth in its motion to set aside default (Dkt. No. 9), Defendant did not evade or neglect its duties to litigate this case on the merits.[2] On the contrary, it engaged in settlement discussions in good faith and expeditiously moved to set aside default as soon as Plaintiff conveyed on January 30, 2019, that the settlement discussions had

---

[1] Where cited, the "Motion" or "Mot." refers to Dkt. No. 7-1.
[2] *See also Eitel* factor 6, *infra*.

come to an end. This is **not** a case where "past misconduct and current failure to litigate [a] case indicate that [defendants are] highly unlikely to correct past misbehavior or otherwise compensate [the plaintiff] without a default judgment by the Court." *Kerr Corp. v. Tri Dental, Inc.*, 2013 U.S. Dist. LEXIS 35728, at *7 (C.D. Cal. Mar. 11, 2013). Plaintiff still has a remedy available to it if a default judgment is not entered: a litigated judgment.

To the extent Plaintiff is arguing that it is prejudiced by the alleged infringement, not the delay, this is not a sufficient reason to dispense with an adjudication on the merits. "It should be obvious why merely being forced to litigate on the merits cannot be considered prejudicial for purposes of lifting a default judgment." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001) (overruled on other grounds). Since "vacating the default judgment merely restores the parties to an even footing in the litigation," *id.*, Plaintiff will not be prejudiced if Defendant has a full and fair opportunity to present its defense, including the defenses that the asserted trademark is invalid and that there is little or no likelihood of confusion.

### B. *Eitel* Factors 2 and 3: Merit and Sufficiency of the Claims

Though Plaintiff acknowledges that the standard for analyzing the second and third *Eitel* factors is similar to a Rule 12(b)(6) motion (*see* Mot. 6 ("*Eitel* factors two and three, which are generally analyzed together, simply 'require that a plaintiff state a claim on which [it] may recover.'" (citation omitted))), Plaintiff falls far short of explaining how the allegations in the Complaint state valid claims. Instead, Plaintiff summarily concludes: "Helix's Complaint properly alleged the necessary elements for each cause of action, leaving the Court the capacity to grant relief as to all of them." (*Id.*)

Plaintiff's *non sequitur* conclusion about the Court's capacity does not ensure that the claims have merit or that the Complaint is sufficient, as required by *Eitel* factors 2 and 3. As an initial matter, as set forth in Defendants proposed answer (*see*

Dkt. No. 9-3), Defendant denies the truth of several of the factual allegations in the Complaint. But even if the Court were to assume that each and every allegation is true and all inferences are drawn in Plaintiff's favor, the Motion still does not demonstrate how liability can be established.

The Complaint asserts five causes of action for alleged violations of 15 U.S.C. §1114(1) (trademark infringement), 15 U.S.C. § 1125(a) (false designation of origin, false or misleading description of fact, or false or misleading representation of fact), 15 U.S.C. § 1125(d) (cybersquatting), California Business & Professions Code § 17200 *et seq.* (unfair competition), and common law infringement and unfair competition. Though Plaintiff gives the most cursory nod to the legal elements of some of the claims, its application of the law to the facts does not come close to meeting its burden of proof. For example, in discussing the likelihood of confusion, Plaintiff mentions only four of the eight *Sleekcraft* factors: strength of the marks, similarity of the goods, similarity of the marks, and similarity of the trade channels. (Mot. 9.) *See AMf Inc. v. Sleekcraft Boats*, 599 F. 2d 341, 348-49 (9th Cir. 1979) (identifying the relevant factors as (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines). Plaintiff fails to identify the elements of unfair competition all together, under either statutory law or common law, and therefore has no way of arguing or proving that all the elements for these claim have been met. The bare-bones conclusions offered by Plaintiff would not even be enough to *oppose* a Rule 12(b)(6) motion in which the *defendant* bears the burden of proof.

Plaintiff's Motion is nothing more than a naked request for the Court to accept, without examination, that Plaintiff's Complaint is good and proper, such that Plaintiff should be awarded the drastic relief of a final judgment before Defendant

has had an opportunity to be heard. Plaintiff's request for such an obvious due process violation should be denied.[3]

### C. *Eitel* Factor 4: The Sum of Money at Stake

Defendant does not dispute that the Motion seeks only a judgment for declaratory and injunctive relief. If, however, Plaintiff were to take the position that it is entitled to damages, it has wholly failed to prove up the amount. Thus, any legal remedy is unwarranted because Plaintiff has offered no evidentiary support for lost profits, unjust enrichment, or reasonable royalty, or any other measure of damages permitted under the claims asserted in the Complaint.

### D. *Eitel* Factor 5: The Possibility of Dispute over Material Facts

Plaintiff invites the Court to rely on Plaintiff's subjective judgment that there exists a likelihood of confusion: "The names of the two companies (Helix Environmental Planning, and Helix Environmental and Strategic Solutions) speak for themselves . . . ." (Mot. 7.) But likelihood of confusion is a question of ultimate fact that is vigorously disputed in litigation after extensive fact and expert discovery. If the case were to be litigated on the merits, rather than decided on a procedural sleight of hand, the parties are certain to have a dispute over material facts. Among other things, Defendant will argue that Plaintiff's rights in the asserted mark are subject to either no protection or very narrow protection because "Helix" is a geographic term. Moreover, because the parties are in different industries, and Plaintiff's customer base consists of entities that are large and sophisticated, there is little or no likelihood of confusion.

Though Plaintiff argues that "none of the allegations, in the absence of an answer to the Complaint, have been or can be genuinely disputed" (*id.*), this presumption cannot work in Plaintiff's favor where, as here, Defendant has moved

---

[3] To the extent that Plaintiff attempts to cure these deficiencies in a reply, Defendant respectfully requests that the arguments be stricken. Such matter should have been presented in the opening Motion so that Defendant has an opportunity respond.

to set aside default and requested leave to file an answer. (*See* Dkt. No. 9-3.) *Cf. Nat'l Photo Grp., LLC v. Pier Corp.*, 2014 U.S. Dist. LEXIS 195663, at *6 (C.D. Cal. Mar. 10, 2014) ("Where the [p]laintiff's complaint is well-pleaded and the defendant makes no effort to properly respond, the likelihood of disputed facts is very low."). Defendant has made several efforts properly to respond to the Complaint, including seeking a stipulation from Plaintiff to set aside default. Defendant then filed a motion that the Court set aside default because Plaintiff refused to stipulate. Plaintiff, in fact, has denied every courtesy possible, even refusing to stipulate to the most minimal procedural accommodation that would have enabled Defendant to participate in the case while also streamlining costs for Defendant, Plaintiff, and the Court: by agreeing to a briefing schedule that allows the present Motion for default judgment to be heard after Defendant's potentially mooting motion to set aside the default. When Plaintiff is willing to incur extra costs to itself—and the Court—simply to guarantee that Defendant does not have a chance to participate in a fair adversarial process, Defendant cannot be faulted for Plaintiff's achieving its goal. Thus, the fact that an answer has not been filed carries little weight in proving that material facts will not be in dispute.

      **E.**     ***Eitel* Factor 6: Default Was Due to Excusable Neglect**

As set forth in Defendant's pending motion to set aside default, the default was entered as a result of excusable neglect, if not outright misrepresentation by Plaintiff. (*See* Dkt. No. 9.)

Defendant relied on Plaintiff's counsel's false and misleading promises of ongoing settlement discussions, which included an explicit understanding that Plaintiff would not require Defendant to file an answer or engage in expensive litigation while the discussions were pending: Plaintiff's counsel offered that waiving service would "allow[] 60 days ***to further discussions of the resolution of the matter without your client having to file an Answer or otherwise respond***[.]" (Arledge Decl. Ex. 2, at 5 (emphasis added).) When Defendant's counsel requested

a renewal of that same condition at a time when Plaintiff was considering Defendant's settlement offer, but had not yet made a counteroffer, Plaintiff's counsel neither accepted nor refused the request. He simply, and inexplicably, ceased to respond. Plaintiff ultimately did not make its counteroffer—that Defendant capitulate in all respects—until after Defendant's deadline to answer the Complaint had passed, and its counsel evaded all attempts by Defendant's counsel to understand Plaintiff's position both with respect to the substance and procedural status of the case. Plaintiff is not entitled to a default judgment because it actively deprived Defendant of an opportunity to participate in a fair adversarial process with the false promise of a compromise. *See United States v. Throckmorton*, 98 U.S. 61, 65-66 (1878) (setting aside judgment "[w]here the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practised on him by his opponent, as by keeping him away from court [or] ***a false promise of a compromise*** . . . " (emphasis added)).

In the alternative, even if Plaintiff's counsel did not engage in conduct that arises to the level of fraud or misconduct, the default was entered at least as a result of mistake or excusable neglect. In *Pioneer Investment Services v. Brunswick Associates*, the United States Supreme Court stated that, "for purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the ***failure to comply with a filing deadline*** is attributable to negligence." 507 U.S. 390, 394 (1993) (emphasis added). Here, the default was caused by Defendant's failure timely to answer the Complaint based on a mistaken understanding of the status of parties' settlement discussions. Defendant did not try to evade the lawsuit or engage in bad faith tactics, and on the contrary generally responded to emails from Plaintiff's counsel within hours. Unlike Plaintiff, Defendant never caused or invited uncertainty about its willingness to negotiate a settlement. Defendant committed only one error in not filing its answer on December 24, 2018, after Plaintiff failed to agree to extend that deadline. Defendant apologizes to the Court for that error, and

submits that its oversight is the kind of failure to comply with a filing deadline that courts have recognized as excusable neglect.

Taking into account all the relevant circumstances, the sixth *Eitel* factor weighs against default judgment because the default was caused by at least excusable neglect.

### F. *Eitel* Factor 7: Policy Favoring Decisions on the Merits

"It is well settled that the Federal Rules of Civil Procedure are to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits and to dispense with technical procedural problems." *Rodgers v. Watt*, 722 F.2d 456, 459 (9th Cir. 1983) (quoting *Staren v. Am. Nat'l Bank & Trust Co. of Chicago*, 529 F.2d 1257, 1263 (7th Cir. 1976)). For the reason stated above, a decision on the merits is not possible with a default judgment here because (1) material facts are in dispute, and (2) Defendant was deprived of an opportunity to participate in a fair adversarial process. Thus, the seventh *Eitel* factor weighs against default judgment.

### G. Permanent Injunction Is Not Warranted

Plaintiff cites no relevant law in requesting the weighty remedy of a permanent injunction. To establish a basis for injunctive relief, a plaintiff must demonstrate (i) it has suffered an irreparable injury; (ii) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (iii) that considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (iv) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). A grant of permanent injunctive relief is an act of equitable discretion by the Court. *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 880 (9th Cir. 2014).

Plaintiff literally gives **not one reason** why injunctive relief is warranted. It only provides a litany of items it would like the Court to include the default

judgment: "[T]his Court should enter a permanent injunction forever enjoining and restraining Defendant and its agents, officers, attorneys, employees, successors, assigns, affiliates, and any persons in privity or active concert or participation with any of them from using the terms 'Helix', 'Helix Environmental', and 'helixenvironmental.com', with or without its accompanying logo, or any words, phrases, symbols, logos, or combination of words and symbols that would create a likelihood of confusion, mistake, and/or deception with the HELIX ENVIRONMENTAL PLANNING service mark and trade name in connection with environmental services," and further requests a destruction order, an order that Defendant submit a compliance report, and an order to transfer the accused domain. (*See* Mot. 13-14.)

Because Plaintiff has not taken the position that it will suffer an irreparable injury; that monetary damages are unavailable or inadequate; that the balance of hardships weighs in Plaintiff's favor; and the public interest is not disserved by a permanent injunction, the Court should decline to make such findings *ex nihilo*. As Plaintiff has implicitly admitted, there are no facts to support granting a permanent injunction.

## IV.  CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court deny Plaintiff's Motion for default judgment. In the alternative, Defendant submits that the Motion is premature and should be deferred until after the Court has considered Defendant's pending motion to set aside default.

Dated:  February 19, 2019                                     **ONE LLP**

By: /s/ Jenny S. Kim
    Christopher W. Arledge
    Jenny S. Kim
    Attorneys for Defendant,
    Helix Environmental and Strategic Solutions

## **CERTIFICATE OF SERVICE**

I certify that on February 19, 2019, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to the CM/ECF participant(s) noted below:

Gary L. Eastman
EASTMAN & MCCARTNEY, LLP
401 West A Street, Suite 1785
San Diego, CA 92101
Email: gary@eastmanmccartney.com

*Attorneys for Plaintiff,*
*Helix Environmental Planning, Inc.*

Christopher W. Arledge
ONE LLP
4000 MacArthur Blvd.
East Tower, Suite 500
Newport Beach, CA 92660
Email: carledge@onellp.com

*Attorneys for Defendant,*
*Helix Environmental and Strategic Solutions*

                                      /s/ Jenny S. Kim
                                      Jenny S. Kim