Gary L. Eastman  (CSB #182518)
Eastman & McCartney LLP
401 West A Street, Suite 1785
San Diego, CA 92101
Tel: (619) 230-1144
Fax: (619) 230-1194
Attorney for Plaintiff
HELIX ENVIRONMENTAL PLANNING, INC.


### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT

| | |
|---|---|
| HELIX ENVIRONMENTAL PLANNING, INC., a California corporation,<br><br>     Plaintiff,<br><br>  vs.<br><br>HELIX ENVIRONMENTAL AND STRATEGIC SOLUTIONS, a California corporation,<br><br>     Defendant. | **Case No.: 3:18-cv-02000-AJB-NLS**<br><br>**PLAINTIFF'S OPPOSiTION TO DEFENDANT'S NOTICE OF MOTION AND MOTION TO SET ASIDE DEFAULT**<br><br>Judge:  Hon. A.J. Battaglia<br>Courtroom: 4A<br>Date: May 30, 2019<br>Time: 2:00pm |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION..............................................................................1

II.   ARGUMENT ....................................................................................3

    A.   Plaintiff's Counsel Engaged in No Misrepresentation, as Filing for Default was Consistent with Plaintiff's Ongoing Insistence that Defendant Discontinue Its Infringement of Plaintiff's Mark ..............3

    B.   Defendant's Failure to Respond to the Complaint Was Attributable to Defendant's Own Inexcusable Neglect.................................................4

        1. Setting Aside Entry of Default Would Prejudice Plaintiff ......... 5

        2. Defendant's Delay Was Intentional and Avoidable ................. 6

        3. Defendant Had the Ability and Control to Respond ................ 6

        4. Defendant Acted in Bad Faith by Neglecting to Respond .......... 7

    C.   Defendant Engaged in Culpable Conduct.....………………………… 7

    D.   Defendant Has No Meritorious Defenses to Infringement.................9

        1. Plaintiff's Trademark is Enforceable……………………………10

        2. Defendant's Conduct Is Likely to Confuse Consumers………… 12

    E.   Reopening Default Would Prejudice Plaintiff...................................13

    F.   Sanctions Against Defendant Appropriate If Set Aside……………13

III.  CONCLUSION ..............................................................................14

# TABLE OF AUTHORITIES

**Page**

## <u>Cases</u>

*Brookfield Commuc'ns, Inc. v. W. Coast Ent'mt Corp.*,

    174 F.3d 1036 (9th Cir. 1999)………………………………………….. 5

*Franchise Holding II, LLC v. Huntington Restaurants Grp., Inc.*,

    375 F.3d 922 (9th Cir. 2004)………………………………... 3, 4, 7, 8, 12

*GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th Cir. 2000) ……………. 5

*In re Jacques Bernier, Inc.*, 894 F.2d 389 (Fed. Cir. 1990) …………………..10

*In re Int'l Taste, Inc.*, 53 U.S.P.Q. 2d 1604 (T.T.A.B. 2000)…………………... 10

*Meadows v. Dominican Republic*, 817 F.2d 517 (9th Cir. 1987)………………… 7

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*,

    507 U.S. 380 (1993) …………………………………………..5, 6, 7

*Surfvivor Media Grp. v. Survivor Prods.*, 406 F.3d 625 (9th Cir. 2005) ………. 11

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 763 (1992) ………………10

*United States v. Throckmorton*, 98 U.S. 61 (1878) …………………………….3, 4

*World Carpets, Inc. v. Dick Littrell's New World Carpets*,

    438 F.2d 482 (5th Cir. 1971)……………………………………………. 9


## <u>Statutes</u>

15 U.S.C. § 1052(e)(2) ……………………………………………………….. 9

15 U.S.C. § 1052(f) …………………………………………………….. 9, 10

15 U.S.C. § 1057(b)...........................................................................................9


## <u>Rules</u>

Federal Rule of Civil Procedure 4(b) ...............................................................4, 6, 8

Federal Rule of Civil Procedure 55(c)...................................................................3

---

# I.   INTRODUCTION

Plaintiff Helix Environmental Planning, Inc. ("Plaintiff") respectfully submits this Opposition to the Notice of Motion and Motion to Set Aside Default filed by Helix Environmental and Strategic Solutions ("Defendant").  Plaintiff Helix filed this action because Defendant has sold services identical or similar to Helix's services using Helix's service mark.  [See Complaint, ¶ 24.]  Helix has used its trademark HELIX ENVIRONMENTAL PLANNING in commerce since 1991 and has had a valid federal registration for it since June 19, 2018. [Complaint, ¶¶ 8, 22.]  Defendant uses the deceptively similar name "Helix Environmental and Strategic Solutions" to advertise, market, offer, and sell environmental consulting services that are similar or identical to Plaintiff's services.  [Complaint, ¶ 31.]

Before filing the Complaint on August 27, 2018, Plaintiff notified Defendant of Defendant's infringing activities several times and kindly asked Defendant to stop using the phrase "Helix Environmental," without any threat of legal action.  [Complaint, ¶ 44.]  Defendant's refusal to stop using Plaintiff's protected phrase prompted Plaintiff to file suit, in order to enjoin Defendant from capitalizing on Plaintiff's goodwill in its service mark.  Defendant had the ability and opportunities to file an Answer or other responsive pleading, thirty (30) days beyond the sixty (60) day period given by statute.  [Docket No. 7-1, at 1.]  When it became clear that Defendant would not respond, Plaintiff's counsel gave Defendant ten days' notice of its intent to file for default judgment on January 18, 2019.  [See Decl. Eastman, Docket No. 5-2, para. 10.]   By Defendant's own admission, Defendant failed to respond to that notification until January 18, 2019, when the time to respond passed Plaintiff's counsel had already set in motion the request for entry of default from the Court Clerk.  [Docket No. 9-1, at 2.]  Defendant wholly failed to participate in the litigation process until it filed its

Motion to Set Aside Default, which it filed nearly three weeks later on February 7, 2019.  [See Docket No. 9-1.]

Defendant justifies its failure to participate by claiming that it believes it was absolved it of its obligation to respond to a formal court proceeding due to ongoing negotiations between the parties.  [Docket No. 9-1, at 3.]  For about sixteen months, from September 2017 through January 2019, Plaintiff gave firm, repeated requests from Plaintiff for Defendant to stop using Plaintiff's mark.  [See Decl. Elizabeth Donavan ¶¶ 1,6,8,10; Decl. Gary Eastman ¶¶ 3,6,7.]  Defendant made superficial offers to alleviate consumer confusion *without stopping its use of Plaintiff's mark*, such as website disclaimers stating that Defendant is not affiliated with Plaintiff.  [Decl. Elizabeth Donavan ¶9.]  However those offers failed to address Plaintiff's chief concern of trademark infringement.  Plaintiff repeatedly declined Defendant's settlement offers, stating that the only way to resolve the issue was for Defendant to stop using the trademark.  [See Decl. Elizabeth Donavan ¶ 10; Decl. Gary Eastman ¶ 13.]

Although Plaintiff extended every courtesy and even gave Defendant extra time to either respond to the Complaint or cease the infringing activity, this did not constitute an explicit or implicit promise of reaching a settlement.  Rather, these delays in filing for default judgment were done "[a]s a courtesy to the Defendant, and in an effort to minimize the expense of litigation."  [Docket No. 7-1, at 1.]  Defendant knew as early as November 16, 2017, more than one year before default was entered, that nothing short of stopping its use of the trademark would address Plaintiff's concerns.  [See Decl. Elizabeth Donavan ¶8.]  After that, Defendant's repeated requests to extend or continue negotiations were just stall tactics; bad-faith efforts to continue its willful infringing activities while capitalizing on Plaintiff's goodwill, and avoid a lawsuit without having to abide by the laws prohibiting trademark infringement.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Therefore, Plaintiff requests that this Court grant Plaintiff's Motion for Entry of Default Judgment Against Defendant Helix Environmental and Strategic Solutions.

## II.   ARGUMENT

Defendant argues that entry of default for Plaintiff should be set aside for "good cause" under Federal Rule of Civil Procedure 55(c).  [Docket 9-1, at 3.] "Good cause" under Rule 55(c) can be satisfied by the same criteria as those in Rule 60(b) relating to relieving a party from a final judgment.  *Franchise Holding II, LLC v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004). Defendant advances five arguments as to why good cause exists to set aside default: (1) Plaintiff's counsel engaged in fraudulent misconduct by mispresenting to Defendant that the parties were engaged in settlement discussions that did not require Defendant's response to the Complaint; (2) Defendant's failure to respond to the Complaint was attributable to Defendant's own excusable neglect, in light of Plaintiff's representations that default would not be entered pending the parties' settlement discussions; (3) Defendant engaged in no culpable conduct; (4) Defendant has meritorious defenses to trademark infringement; and (5) Plaintiff would not be prejudiced by an adjudication on the merits.  None of these arguments is persuasive; therefore, this Court should grant Plaintiff's Motion for Entry of Default Judgment.

## A.   Plaintiff's Counsel Engaged in No Misrepresentation, as Filing for Default was Consistent with Plaintiff's Ongoing Insistence that Defendant Discontinue Its Infringement of Plaintiff's Mark

---

Plaintiff's Opposition to Defendant's Motion to Set Aside Entry of Default Judgment

18-CV-02000-AJB-NLS

Under Rule 60(b), a judgment may be set aside due to fraud, misrepresentation, or misconduct by an opposing party.  Fed. R. Civ. P. 60(b). However, Plaintiff did not engage in fraud, misrepresentation, or misconduct, as Defendant alleges.  Defendant suggests that Plaintiff intentionally coaxed Defendant into a false sense of complacency through a "false promise of a compromise."  [Docket 9-1, at 4, citing *United States v. Throckmorton*, 98 U.S. 61, 65 (1878).]  Defendant emphasizes the Rule 4(b) service waiver that granted Defendant sixty (60) days to "further discussions of the resolution of the matter without your client having to file an Answer or otherwise respond."  [See Docket No. 4; Arledge Decl. Ex. 2, at 5.]  The sixty-day extension was just that, an extension.  It was not an absolute promise to resolve the matter out of court, but rather an incentive for Defendant to agree to stop using Plaintiff's mark so that Plaintiff could drop the lawsuit.  The parties did not reach an agreement within the sixty-day period nor was any additional extension agreed to or sought from the court, thus requiring Defendant to formally respond to the Complaint by the Rule 4 deadline.

Plaintiff did not "[cause] or [invite] uncertainty about its willingness to negotiate a settlement," as Defendant suggests.  [Docket 9-1, at 6.]  Considering Plaintiff never wavered from its position that Defendant was infringing Plaintiff's trademark, Defendant could not have been caught by surprise when the negotiations failed.  [Decl. Elizabeth Donavan ¶ 10; Decl. Gary Eastman ¶ 6-9.] There were no negotiations that were steadily moving forward, as Defendant asserts - the parties were at a stalemate: Plaintiff insisted that Defendant stop using the trademark, and Defendant refused.  [Docket 7-1, at 12.]  Far from intentionally misleading Defendant, Plaintiff even formally notified Defendant of the status of the negotiations in a clear and unequivocal letter sent to Defendant's counsel a full ten days before filing for entry of default judgment.  [See Decl.

Eastman, Docket No. 5-2, para. 10.][1]  Thus, Plaintiff's counsel did not fraudulently mislead Defendant into believing that there would be an impending settlement relieving Defendant of its legal obligation to respond to a formal court proceeding.

**B.     Defendant's Failure to Respond to the Complaint Was Attributable to Defendant's Own Inexcusable Neglect**

A motion to set aside default can be set aside on the basis of the defendant's "excusable neglect." *Franchise Holding II*, 375 F.3d at 927.  Defendant acknowledges that it may have simply neglected to respond to the lawsuit at the appropriate time.  [Docket 9-1, at 5-6.]  The issue is whether Defendant's neglect was "excusable" such that the Court still should set aside Plaintiff's motion for default judgment.

The United States Supreme Court laid out four factors to determine whether a party's neglect is "excusable": (1) danger of prejudice to the [opposing party]; (2) length of delay and potential impact on judicial proceedings; (3) reason for the delay; and (4) whether the [party] acted in good faith.  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 395 (1993).

Because factors one, two, and four strongly favor Plaintiff, and the relatively short length of delay (factor three) should not automatically preclude default judgment given Defendant's bad faith in delaying action, this Court should grant Plaintiff's motion for entry of default judgment.

**1. Setting Aside Entry of Default Would Prejudice Plaintiff**

There is a danger of prejudice to Plaintiff if its entry of default is set aside. When a trademark is infringed, the harm to the Plaintiff is ongoing because consumers will continue to confuse the Plaintiff's and Defendant's brands until

---

[1] FRCP 55 does not require notice be given to a defendant that has not appeared in the case. Nevertheless, Plaintiff's counsel gave advanced, clear notice any negotiations had failed, and clearly set forth its intent to file for default to protect Plaintiff's rights, and when it would do so.

Plaintiff's Opposition to Defendant's Motion to Set Aside Entry of Default Judgment

1   the Defendant discontinues the unauthorized trademark use.  This diminishes
2   Plaintiff's goodwill in a way that is difficult to later compensate for in monetary
3   damages.  Courts in fact contemplate that the harm caused by trademark
4   infringement can be irreparable, which is why courts will often grant preliminary
5   injunctions enjoining infringers before the lawsuit has concluded.  See, e.g.,
6   *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 2019 (9th Cir. 2000)
7   (affirming grant of preliminary injunction in a trademark infringement case);
8   *Brookfield Commuc'ns, Inc. v. W. Coast Ent'mt Corp.*, 174 F.3d 1036, 1056–57
9   (9th Cir. 1999) (reversing lower court's denial of preliminary injunction).

10          Here, Plaintiff's goodwill has suffered since Defendant began using
11  Plaintiff's phrase "Helix Environmental" on or around February 8, 2016.
12  [Complaint, ¶ 24.]  After first giving Defendant several opportunities to stop the
13  infringement without resorting to legal action, Plaintiff filed the Complaint on
14  August 27, 2018.  [Complaint, ¶ 44.]  The harm has continued throughout the time
15  Defendant delayed in responding to the Complaint, prompting Plaintiff to file for
16  entry of default judgment to protect its intellectual property.  Defendant has
17  already prejudiced Plaintiff by delaying the proceedings in not responding to the
18  Complaint within the sixty-day period.  Setting aside default and starting litigation
19  at this late stage would only cause further, irreparable harm to Plaintiff's brand
20  until the infringement can be stopped.

21          **2. Defendant's Delay Was Intentional and Avoidable**

22          The relatively short length of the Defendant's delay should not preclude
23  entry of default judgment.  Although Defendant involved itself in the litigation a
24  few weeks after the December 24, 2018 court deadline, it only became involved in
25  response to Plaintiff's obtaining entry of default judgment.  That action does not
26  change Defendant's pattern of evading the lawsuit.  Defendant's unexcused delays
27  are simply an elaborate game of "chicken" intended to force Plaintiff into action

28

and expense, while Defendant merrily continues to enjoy the benefits of its willful trademark infringement – a situation that Plaintiff cannot tolerate further.

### 3. Defendant Had the Ability and Control to Respond

Defendant's reasons for delaying the proceedings are inexcusable. Default judgment may be set aside if there was a legitimate reason for the delay, particularly one that was not within the "reasonable control" of the party seeking to set aside default. *Pioneer*, 507 U.S. at 395. Defendant claims that it failed to respond due to its "mistaken understanding of the status of [the] parties' settlement discussions." [Docket 9-1, at 6.] Defendant has previously made good-faith attempts to negotiate by offering to add disclaimers to its website and offering to stop using the standalone phrase "Helix Environmental." [Decl. Elizabeth Donavan.] But in response to those offers, Plaintiff had steadfastly communicated to Defendant that Plaintiff would only be willing to settle the case if Defendant agreed to stop using Plaintiff's mark altogether. [Decl. Elizabeth Donovan ¶¶ 6,8,10; Decl. Gary Eastman ¶¶ 6,7.]

Even if, despite this, Defendant were genuinely mistaken as to the direction of the discussions, the condition of the Rule 4(b) waiver was that Defendant needed to respond to the lawsuit by December 24, 2018 if no settlement was reached by that date. [See Docket No. 4.] It was fully within Defendant's control to choose whether or not to respond to the lawsuit; in fact, Plaintiff's counsel sent Defendant's counsel ten days' advance notice to either stop using the trademark or respond to the Complaint, or else Plaintiff would file for default judgment. Clearly Plaintiff's letter of January 8, 2019 removed all doubt as to failed settlement, Plaintiff's demands, and imminent default.

Defendant knowingly risked default judgment by failing to take advantage of the final opportunity to respond. Moreover, even if Defendant mistakenly believed that its hope of achieving a future settlement excused it from responding to the Complaint, "inadvertence, ignorance of the rules, or mistakes construing the

rules do not usually constitute 'excusable' neglect." *Pioneer*, 507 U.S. at 395. Therefore, Defendant's failure to respond to the Complaint within the time period was inexcusable.

### 4. Defendant Acted in Bad Faith by Neglecting to Respond

Defendant acted in bad faith by purposefully failing to respond to the Complaint until default was entered and it was faced with the prospect of default judgment.  Because attempted negotiations had been unproductive, and had reached an impasse, Defendant should not have delayed in filing an Answer or other responsive pleading.  Given that the parties were not positioned to reach an agreement, Defendant's delays appear to be a tactic to unnecessarily prolong the proceedings while continuing to infringe and harm the valuable goodwill in Plaintiff's mark.

### C.     Defendant Engaged in Culpable Conduct

A motion for default judgment should not be set aside if the defendant engaged in culpable conduct leading to the entry of default.  *Franchise Holding II*, 375 F.3d at 926.  Culpable conduct, which is closely related to inexcusable neglect, exists when the defendant "has received actual or constructive notice of the filing of the action and failed to answer."  *Franchise Holding II*, 375 F.3d at 926–27 (quoting *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987)).  In *Franchise Holding*, the Ninth Circuit declined to set aside default judgment, concluding, "The entry of default and the default judgment were squarely within [Defendant's] control.  [Defendant] received actual notice of both the action and [Plaintiff's] intent to pursue it.  [Defendant] nevertheless failed to file an extension or anything else with the district court until [Plaintiff] began to collect on the default judgment."  *Id.* at 927.  This explanation summarizes what happened in our case.  As discussed with respect to excusable neglect, Defendant does not dispute that it had actual notice of the lawsuit, shown by how it agreed to

a Rule 4(b) waiver of service of summons.  [See Docket No. 4.]  Further, Defendant was aware of Plaintiff's intent to pursue the action, exemplified by how Plaintiff announced its intent to file for default judgment ten days in advance of doing so.  [See Decl. Eastman, Docket No. 5-2, para. 10; Decl. Arledge Doc. No. 12-1 ¶ 8.]

In spite of this, Defendant did not file an extension or any other pleading with the Court until after default was entered.  Still, Defendant creatively seeks to project blame on Plaintiff, alleging that Plaintiff contributed to the delay by asking for the 4(b) waiver, "with the express goal that the parties have additional time to discuss alternatives to litigation."  [Docket No. 9-1, at 7.]  Plaintiff was within its right to try to encourage Defendant to stop the infringement before resorting to litigation, through a mutually agreed upon extension authorized by Fed. R. Civ. P. 4(b).  But as Plaintiff repeated communicated throughout the parties' discussions, the only alternative to litigation was for Defendant to stop using Plaintiff's trademark.  [Decl. Elizabeth Donavan ¶¶ 6,8,10; Decl. Gary Eastman ¶¶ 6,13.]  Defendant knew that it was required to respond to the Complaint if an agreement was not reached by December 24, 2018, and it was aware of Plaintiff's intent to file for default judgment if Defendant did not comply.  Defendant engaged in culpable conduct by knowingly ignoring the legal procedures attendant with being named as a defendant in a lawsuit.

## D.    Defendant Has No Meritorious Defenses to Infringement

A motion for default may be set aside if the defendant can establish meritorious defenses to the plaintiff's cause of action.  *Franchise Holding II*, 375 F.3d at 926.  Defendant alleges that it has two meritorious defenses to trademark infringement: trademark unenforceability and absence of likely confusion. Because both asserted defenses lack merit, the Court should not set aside entry of default.

### 1.    Plaintiff's Trademark Is Enforceable

Defendant argues that Plaintiff's mark HELIX ENVIRONMENTAL PLANNING has little or no protection because "Helix" is a geographic term. [Docket No. 9-1, at 6.]  Plaintiff's trademark is registered on the Principal Register.  [Complaint, Exhibit A.]  Registration on the Principal Register is prima facie evidence of the mark's validity.  15 U.S.C. § 1057(b).  But notwithstanding this presumption of validity, even terms that are "primarily geographically descriptive" can be recognized as trademark if they are "distinctive of the applicant's goods in commerce."  15 U.S.C. §§ 1052(e)(2), (f).

First, "Helix" is not *primarily* geographically descriptive of Plaintiff's services.  "The word 'primarily' should not be overlooked, for it is not the intent of the federal statute to refuse registration of a mark where the geographic meaning is minor, obscure, remote, or unconnected with the goods."  *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 486 (5th Cir. 1971).  Mount Helix is a mountain in San Diego County, and Plaintiff is headquartered in San Diego County.[2] [Complaint, ¶1.]  However, San Diego's Mount Helix neighborhood is not the only, or most obvious, connotation of the term "Helix"—"Helix" could also refer to the double-helix shape of DNA, or have a number of other scientific meanings.  Plaintiff's environmental focus is suggestive, and can evoke the DNA-related meaning, as DNA is a common symbol for science.  A term with both geographic and non-geographic connotations can only be primarily geographically descriptive if the geographic meaning takes precedence in the minds of consumers.  *In re Int'l Taste, Inc.*, 53 U.S.P.Q. 2d 1604 (T.T.A.B. 2000).   Defendant's trumped-up charade that the term HELIX is geographically descriptive simply fails when considering where Defendant is located – in Porter Ranch, California – far from any Mount Helix

---

[2] See https://www.mthelixpark.org/.

neighborhood.  Defendant uses HELIX – and since they are not anywhere near Mount Helix, it axiomatically cannot be geographically descriptive.

In *International Taste*, the Trademark Trial and Appeal Board held that "Hollywood Fries" was not primarily geographically descriptive, because the term "Hollywood" could refer to the entertainment industry generally, as opposed to the city of Hollywood specifically.  *Id.*  Applied here, the word "Helix" does not conjure San Diego's Mount Helix neighborhood for most consumers—especially those outside San Diego, as Plaintiff provides services throughout California and the western United States.  [Complaint, ¶ 7.]  Nor would a reasonable consumer believe that Plaintiff's environmental consulting services derive specifically from Mount Helix, because consulting services are produced by humans and are not products of the environment.  See *In re Jacques Bernier, Inc.*, 894 F.2d 389, 391 (Fed. Cir. 1990) (holding that a term is not primarily geographically descriptive if consumers would not reasonably associate the goods or services with the place named).  Therefore, trademark registration was properly granted on the basis that "Helix Environmental Planning" is not primarily geographically descriptive.

But second, even if the mark were primarily geographically descriptive, primarily geographically descriptive marks are still registrable with proof of secondary meaning, i.e. that the trademark is distinctive of the applicant's goods in commerce.  15 U.S.C. § 1052(f).  A trademark has secondary meaning when it has "come through use to be uniquely associated with a specific source." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 763 (1992).  Plaintiff has used the service mark HELIX ENVIRONMENTAL PLANNING continuously for 27 years, since 1991.  [Complaint, ¶ 47.]  As a result, this trademark has come to be and is now recognized and relied on by the trade and the public as identifying Plaintiff's services and business reputation.  [Complaint, ¶¶ 17, 20.]  Because HELIX ENVIRONMENTAL PLANNING has acquired ample secondary

meaning to make it distinctive of Plaintiff's services, it is enforceable as a trademark regardless of whether it might be primarily geographically descriptive.

### 2. Defendant's Conduct Is Likely to Confuse Consumers

Defendant also argues that there is no likelihood of confusion between the two companies, because the two companies are in different industries and because Plaintiff's clients are sophisticated enough to not be confused.  [Docket No. 9-1, at 6.]  Defendant's asserted reasons are inaccurate.

First, Plaintiff and Defendant are not in entirely different industries.  Both companies provide environmental consulting services in Southern California.  [Complaint, ¶¶ 7, 26.]  Defendant counsels private businesses on how to comply with regulations of the federal Occupational Safety and Health Administration.[3]  Meanwhile, Plaintiff specializes in both state and federal environmental compliance, serving both public and private clients.[4]  Second, just because some of Plaintiff's clients may be sophisticated does not eliminate the probability of confusion.  Even sophisticated public agencies such as California Department of Transportation have experienced confusion between the two companies.  [Decl. Gary Eastman ¶¶ 7,8.]  Moreover, citing the sophistication of Plaintiff's clients ignores the potential for reverse confusion, where Defendant's less sophisticated clients could mistakenly contact Plaintiff.  See *Surfvivor Media Grp. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005) (defining reverse confusion as instances where consumers intending to do business with the junior user are mistakenly led to the senior user).  Ultimately, Defendant's use of "Helix Environmental" to offer, advertise, and sell environmental consulting services in the same region as Plaintiff has caused, at minimum, a likelihood of confusion.  [Complaint, ¶ 29.]

---

[3] See Defendant's website, www.helixenvironmental.com/.
[4] See Plaintiff's website, www.helixepi.com/services/ceqanepa-compliance-2/. See also Complaint, ¶ 7.

**E.    Reopening the Default Judgment Would Prejudice Plaintiff**

A motion for default can sustained if setting aside default would prejudice the plaintiff.  *Franchise Holding II*, 375 F.3d at 926.  As discussed above with respect to excusable neglect, Plaintiff does not seek damages for a past harm; rather, the harm from trademark infringement is ongoing and continues to weaken Plaintiff's goodwill for as long the infringement is allowed to continue.  This is why Plaintiff's unambiguous stance throughout settlement discussions has been that Defendant needs to stop using the term "Helix Environmental" in connection with environmental consulting services.  Up to this point, Defendant has been unwilling to discontinue its use of Plaintiff's mark but has ignored the legal consequence—that it is a named defendant in a trademark infringement lawsuit. Defendant's failure to respond to the Complaint shows Defendant's prerogative to avoid the situation for as long as possible, without offering a meaningful solution, while the Plaintiff's harms continue to accrue.  Due to the ongoing nature of Defendant's infringement, setting aside default and proceeding to trial would severely prejudice Plaintiff.

**F.    Sanctions Against Defendant Appropriate If Set Aside**

In addition to the clear harm being caused to Plaintiff's goodwill due to Defendant's ongoing infringement, Plaintiff has incurred significant legal fees and costs in the preparation and filing of the Request for Entry of Clerk's Default, its Motion for Entry of Default Judgment, and defending Defendant's Motion to Set Aside Default.  Thus, should the court determine Defendant's utter failure to take action despite its acknowledged deadlines and the clear notice by Plaintiff of the intent to default warrants a set aside of the Default, Plaintiff respectfully requests this court set a condition on setting aside default and award Plaintiff its attorney fees and costs related to Defendants neglect according to proof.

---

"Even where the Court finds the merits in favor of setting aside an entry of default," the Court has discretion to condition setting aside the default "upon the payment of a sanction." *Nilsson, Robbins et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1546-47 (9th Cir. 1988). By conditioning the setting aside of a default, the Court can rectify "any prejudice suffered by the non-defaulting party as a result of the default and the subsequent reopening of the litigation." *Id*. at 1546. Defendants neglect of its obligations in this case is inexcusable, and simply a blatant attempt to thwart Plaintiff's efforts to police its mark while Defendant continues to benefit from the infringement of the HELIX ENVIRONMENTAL trademark.  Should a set-aside be considered, an award of monetary sanctions for Plaintiff's economic loss due to Defendant's delay tactics and gamesmanship should be awarded to Plaintiff.

## III.   CONCLUSION

Plaintiff seeks no monetary damages in its motion for Default Judgment, only an injunction for Defendant to stop using its infringing mark and to transfer its infringing Internet domain name to Plaintiff.  Although Plaintiff is certainly willing to defend its trademark at trial, this would only prolong Plaintiff's harm, which will result in additional hardship on both parties to calculate the damages Plaintiff has suffered in the interim.  Defendant could be responsible for additional damages as a result.  Given Defendant's inexcusable avoidance of the litigation, Defendant's clear infringement of Plaintiff's mark, and Plaintiff's request for injunctive relief only, justice requires Plaintiff's Motion for Entry of Default Judgment be granted.

For the foregoing reasons, Plaintiff Helix Environmental Planning, Inc. respectfully requests the Court grant this motion for entry of default judgment against Defendant Helix Environmental and Strategic Solutions for trademark infringement under federal and California law, unfair competition under federal

1   and California law, and cybersquatting under the federal Anticybersquatting

2   Consumer Protection Act.  Plaintiff also requests the Court enter a permanent

3   injunction against Defendant restraining it from using the term "Helix

4   Environmental" in connection with environmental services; and order that

5   Defendant relinquish all rights in the Internet domain name

6   helixenvironmental.com and direct Domains By Proxy, LLC; GoDaddy.com,

7   LLC; or any other party in position to do so, to transfer the Internet domain name

8   to Plaintiff.

9

10

11                                                   Respectfully submitted,

12

13   Dated: February 21, 2019

14                                                   Eastman & McCartney LLP

15                                                   By:    /s/  Gary L. Eastman

16                                                          Gary L. Eastman, Esq.
                                                            Attorney for Plaintiff
17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned certify and declare as follows:

I am over the age of eighteen years and not a party to this action. My business address is 401 West A Street, Suite 1785, San Diego, California, 92101, which is located in the county where the service described below took place.

On February 21, 2019, at my place of business in San Diego, California, I served a copy of the following document:

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO SET ASIDE DEFAULT**

The undersigned hereby certifies that he caused a copy of the foregoing documents to be filed with the clerk of the U.S. District Court, Southern District of California, using the CM/ECF filing system, and a copy will be electronically mailed to the following recipients via ECF electronic service:

Chris Arledge, Esq.
One LLP
4000 MacArthur Blvd, East Tower Ste. 500
Newport Beach, CA 92660

Attorney for Helix Environmental and Strategic Solutions

I certify and declare under penalty of perjury under the laws of the United States of American and the State of California that the foregoing is true and correct.

Executed on February 21, 2019, in San Diego, California.

By:        /s/ Gary Eastman
                Gary Eastman

---

Plaintiff's Opposition to Defendant's Motion to Set Aside Entry of Default Judgment

18-CV-02000-AJB-NLS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff's Opposition to Defendant's Motion to Set Aside Entry of Default Judgment

18-CV-02000-AJB-NLS