Gary L. Eastman  (CSB #182518)
Eastman & McCartney LLP
401 West A Street, Suite 1785
San Diego, CA 92101
Tel: (619) 230-1144
Fax: (619) 230-1194
Attorney for Plaintiff
HELIX ENVIRONMENTAL PLANNING, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT

| | |
|---|---|
| HELIX ENVIRONMENTAL PLANNING, INC., a California corporation,<br><br>             Plaintiff,<br><br>      vs.<br><br>HELIX ENVIRONMENTAL AND STRATEGIC SOLUTIONS, a California corporation,<br><br>             Defendant. | **Case No.: 3:18-cv-02000-AJB-NLS**<br><br>**REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**<br><br>Judge:  Hon. A.J. Battaglia<br>Courtroom: 4A<br>Date: May 30, 2019<br>Time: 2:00pm |

## I.  INTRODUCTION

Plaintiff Helix Environmental Planning, Inc. ("Plaintiff") respectfully submits this Reply to the Opposition filed by Helix Environmental and Strategic Solutions (Defendant) in response to Plaintiff's Motion for Entry of Default Judgment.  In this Reply, Plaintiff presents both factual and legal counterarguments to the points raised in Defendant's Opposition.  Plaintiff ultimately requests that the Court grant Plaintiff's Motion for Entry of Default Judgment.

## II.  ARGUMENT

### A.  Factual Counterarguments

The main factual misrepresentation in Defendant's Opposition is that Plaintiff "denied [Defendant] every courtesy possible" in order to "[deprive] Defendant of an opportunity to participate in a fair adversarial process."  [Dkt. 12, at 6-7.]  Far from denying every courtesy possible, Plaintiff waited nearly a year after first contacting Defendant in September 2017 to file a Complaint in August 2018.  [See Decl. Elizabeth Donavan (Dkt. 14-2), ¶ 3.]  Meanwhile, Plaintiff unequivocally and repeatedly told Defendant that litigation would ensue if Defendant did not stop using the phrase "Helix Environmental" to offer, advertise, and sell environmental consulting services similar to Plaintiff's.  Between September 2017 and August 2018, Plaintiff's attorneys sent Defendant at least six different letters with this same, clear message.  [See Decl. Elizabeth Donavan (Dkt. 14-2), Exhibits 1, 3, 5, 7; Decl. Gary Eastman (Dkt. 14-1), Exhibits 1–2, 4.]  Plaintiff never withdrew its allegations of trademark infringement and continued giving Defendant these opportunities pre-litigation to stop the infringement.  Plaintiff desired to resolve the problem amicably and out-of-court, as Defendant itself implicitly admits in its own proposed answer.[1]

---

[1] Indeed, Defendant's proposed Answer includes twenty affirmative defenses, including laches, acquiescence, and estoppel.  [Dkt. 9-3, at 6-7, 9.]  Plaintiff was actively trying to persuade

|   |   |
|---|---|
| 1 | Even after filing the Complaint, Plaintiff still extended the courtesy of |
| 2 | offering a Rule 4(b) waiver of service, thus extending Defendant's deadline for an |
| 3 | Answer to sixty (60) days from the date the waiver was sent. [See Dkt. 4.] |
| 4 | Plaintiff proposed the waiver "[a]s a courtesy to the Defendant, and in an effort to |
| 5 | minimize the expense of litigation," in hopes that Defendant would finally agree |
| 6 | to stop using the trademark. [Dkt. 7-1, at 1.] Defendant in its Opposition quotes |
| 7 | Plaintiff's assurance that the 4(b) waiver would "allow [] 60 days *to further* |
| 8 | *discussions of the resolution of the matter without your client having to file an* |
| 9 | *Answer or otherwise respond*." [Dkt. 12, at 7, emphasis retained from |
| 10 | Defendant's Opposition.] Defendant selectively highlights the portion that, when |
| 11 | taken out of context, might appear to support Defendant's misleading assertion |
| 12 | that it did not need to respond to the lawsuit. In doing so, Defendant ignored the |
| 13 | critical first words: "**allow [] 60 days**." The parties' mutual understanding was |
| 14 | that Defendant's obligation to respond was merely postponed until December 24, |
| 15 | 2018, not eliminated. Still, Defendant failed to file an Answer or otherwise |
| 16 | respond to the Complaint. Although Defendant claims that it requested an |
| 17 | additional extension [Dkt. 12, at 7-8], Plaintiff had no obligation to agree to |
| 18 | extend the time, especially considering that the parties had already been at a |
| 19 | stalemate since as early as November 2017 and further discussions were likely to |
| 20 | be futile. [See Decl. Elizabeth Donavan (Dkt. 14-2), ¶ 8; Ex. 5.] |
| 21 | Plaintiff's Request for Entry of Clerk's Default and Motion for Entry of |
| 22 | Default could not have been a "procedural sleight of hand" [see Dkt. 12, at 6], |
| 23 | when Plaintiff gave Defendant a full ten days' notice before requesting entry of |
| 24 | clerk's default. Plaintiff sent its notice letter to Defendant on January 8, 2019. |
| 25 | [Dkt. 7-1, at 1.] Although Defendant now acknowledges that it received the letter |
| 26 | on that date, it chose not to respond until January 18, 2019, when the ten days had |
| 27 | |
| 28 | Defendant to cease infringement and resolve the dispute out of court, which Defendant deceptively attempts to characterize as an unreasonable delay in filing suit. |

Reply to Defendant's Opposition to Plaintiff's Motion for Entry of Default Judgment
18-CV-02000-AJB-NLS

already passed and Plaintiff was prepared to file its request. [Decl. Gary Eastman (Dkt. 14-1), ¶ 14.]

Defendant emphasizes its "expeditious" participation proceedings since January 30, 2019, after the Clerk had already entered default for Plaintiff. [Dkt. 12, at 3.] But Defendant's participation was required long before then, at least on December 24, 2018, when an Answer or other responsive pleading was due. Plaintiff generously gave Defendant the chance to correct that error during the ten-day period between January 8, 2019, when it sent the notice letter to Defendant, and January 18, 2019, when it finally filed the Request for Entry of Clerk's Default. Defendant's purposeful failure to acknowledge the intent letter until the very last minute continues Defendant's pattern of drawing out unproductive negotiations to stall litigation—while Defendant continues to tarnish Plaintiff's goodwill and business reputation. The Court should not allow these bad-faith tactics to continue and thus should grant Plaintiff's Motion.

### B. Legal Counterarguments

Contrary to Defendant's arguments, *Eitel* factors 2 and 3 (merit and sufficiency of the allegations) and factor 5 (possibility of dispute over material facts) support default judgment. While choosing to focus on those factors in this Reply, Plaintiff does not concede any of the other factors.

#### 1. *Eitel Factors 2 and 3: Merit and Sufficiency of Allegations*

Plaintiff satisfied the pleading requirement associated with *Eitel* factors 2 and 3. Defendant acknowledged in its Opposition that these two factors, which evaluate the merit and sufficiency of Plaintiff's claims, share the same pleading standard as a Rule 12(b)(6) motion to dismiss. [Dkt. 12, at 4.] When a defendant files a 12(b)(6) motion to dismiss, "the Court must determine whether the Plaintiff's allegations, *taken as true*, sufficiently state a claim for Plaintiff's various causes of action." *Spy Optic, Inc. v. Alibaba.com*, Inc., 163 F. Supp. 3d 755, 765 (C.D. Cal. 2015) (emphasis added). Similarly, in default proceedings,

Reply to Defendant's Opposition to Plaintiff's Motion for Entry of Default Judgment
18-CV-02000-AJB-NLS

1  the Ninth Circuit has held that "[w]ith respect to the determination of liability and
2  the default judgment itself, the general rule is that well-pled allegations in the
3  complaint regarding liability are deemed true." *Fair Housing of Marin v. Combs*,
4  285 F.3d 899, 906 (9th Cir. 2002). Under *Twombly*, a factual allegation is well-
5  pled if it is "enough to raise a right to relief above the speculative level on the
6  assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v.*
7  *Twombly*, 550 U.S. 544, 545 (2007).
8        The allegations in the complaint demonstrate entitlement to relief beyond
9  speculation. Importantly, trademark infringement requires only a "likelihood" of
10 confusion, not a certainty or probability. 15 U.S.C. § 1114(1). And under the
11 12(b)(6) pleading standard, the Plaintiff need only suggest the existence of a
12 "likelihood" beyond mere speculation in order to qualify for default judgment.
13 Plaintiff does just that; in its Complaint, Plaintiff sufficiently establishes that
14 consumers are likely to be confused between "*Helix Environmental* Planning" and
15 "*Helix Environmental* and Strategic Solutions" both offering environmental
16 consulting services. [Complaint, ¶¶ 32–56.]
17       In *Hostzilla, Ltd. v. Hostzilla, Inc.*, two similarly named companies were
18 both offering web-hosting services. [Complaint at 2–3, *Hostzilla, Ltd. v.*
19 *Hostzilla, Inc.*, No. 2:12cv10616 (C.D. Cal. Feb. 25, 2013).] As in the present
20 case, the plaintiff's complaint alleged that the plaintiff was the first user of the
21 trademark and that the defendant's use of the same trademark caused a likelihood
22 of confusion, along with damage to the plaintiff's goodwill and business
23 reputation. [Complaint at 10, *Hostzilla, Ltd. v. Hostzilla, Inc.*, No. 2:12cv10616
24 (C.D. Cal. Feb. 25, 2013).] The plaintiff sought only an injunction, and no
25 damages, via default judgment. *Hostzilla, Ltd. v. Hostzilla, Inc.*, No.
26 2:12cv10616, 2013 WL 12142839, at *1 (C.D. Cal. Feb. 25, 2013). Based on the
27 allegations and the nature of the relief sought, the Court granted default judgment
28 as to the plaintiff's trademark infringement and unfair competition claims. *Id.*

Reply to Defendant's Opposition to Plaintiff's Motion for Entry of Default Judgment
18-CV-02000-AJB-NLS
4

Like *in Hostzilla*, there are a plethora of undisputed facts showing Plaintiff's ownership of the "Helix Environmental Planning" trademark and Defendant's use of a confusingly similar trademark in the same or similar industry.  Defendant incorrectly argues in its opposition that Plaintiff, by discussing only four of the eight *Sleekcraft* factors, failed to sufficiently plead likelihood of confusion.  [Dkt. 12, at 5.]  Defendant misconstrues the nature of the *Sleekcraft* factors: a plaintiff need not directly address all factors to prove likelihood of confusion. See *Brookfield Commuc'ns, Inc. v. W. Coast Ent'mt Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).  "Although some factors—such as the similarity of the marks and whether the two companies are direct competitors—will always be important, it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors." *Id.* Plaintiff's *Sleekcraft* analysis appropriately focused on the two most important factors, similarity of the marks and relatedness of the services, as well as the strength of the plaintiff's mark and the similarity of the parties' respective trade channels.  [Dkt. 7-1, at 8.]

Particularly probative of likely confusion is Defendant's use of "Helix Environmental," the portion of Plaintiff's registered trademark entitled to the most weight, as the opening phrase of "Helix Environmental and Strategic Solutions"—without even changing the order of the words.  This bears on one *Sleekcraft* factor, which evaluates the similarity of the parties' marks based on "[how] they appear in the marketplace . . . in terms of appearance, sound, and meaning." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000).  Defendant does not dispute that it borrows the phrase "Helix Environmental" in its own mark.  Rather, Defendant argues that the Plaintiff's trademark is unenforceable despite having recently received federal registration in June 2018.  [Dkt. 9-1, at 6.]  Defendant unsuccessfully tilts at the following windmills: (1) the presumption of validity that comes with a Principal Register trademark registration, (2) the fact that "Helix

Reply to Defendant's Opposition to Plaintiff's Motion for Entry of Default Judgment
18-CV-02000-AJB-NLS

1  Environmental" is simply *not* primarily geographically descriptive, and (3) the
2  fact that Plaintiff's trademark "Helix Environmental Planning" has acquired
3  ample secondary meaning within the public over the past *27 years* of continuous
4  use in commerce.  [See Dkt. 14, at 10–12.]  Moreover, Plaintiff is often referred to
5  in the industry as its shortened name "Helix Environmental", further supporting a
6  likelihood of confusion. [See Dkt. No. 1, at 11, 14, 16].  Based on the facts
7  presented, Plaintiff's mark is enforceable.  Given the mark's enforceability,
8  Defendant unarguably replicates the distinctive portion of Plaintiff's trademark.
9  Therefore, this *Sleekcraft* factor favors Plaintiff.
10         Equally probative is the relatedness of the parties' goods or services.
11 Defendant's business need not be identical to Plaintiff's; the parties' businesses
12 are sufficiently related to give rise to a likelihood of confusion.  [See Dkt. 14, at
13 12.]  This second *Sleekcraft* factor posits that selling related goods or services is
14 more likely to cause consumer confusion.  *Brookfield Commuc'ns*, 174 F.3d at
15 1055–56.  Services are "related" if they "would be reasonably thought by the
16 buying public to come from the same source if sold under the same mark."
17 *Interplay Ent'mt Corp. v. TopWare Interactive, Inc.*, 751 F. Supp. 2d 1132, 1137
18 (C.D. Cal. 2010), quoting *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457
19 F.3d 1062, 1076 n.10 (9th Cir. 2006).  This definition fits the facts at hand:
20 Plaintiff's business offers many different categories of services related to
21 environmental consulting and compliance,[2] including federal regulatory
22 compliance, and federal regulatory compliance is exactly what Defendant offers.
23        The Ninth Circuit has held that goods or services are related when the
24 defendant's services are a subset of what the plaintiff offers.  See *Dreamwerks*
25 *Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1131 (9th Cir. 1998) (holding that
26 "Dreamwerks" science fiction conventions were services "related" to the
27 
28 [2] These categories include habitat restoration, acoustics and noise control, regulatory permitting, and air quality.  See Plaintiff's website, www.helixepi.com/services/ceqanepa-compliance-2/.

Reply to Defendant's Opposition to Plaintiff's Motion for Entry of Default Judgment
18-CV-02000-AJB-NLS
6

Dreamworks entertainment conglomerate because the diversity of Dreamworks's products and services could lead consumers to reasonably believe that Dreamworks could host conventions). Here, Defendant specializes in federal Occupational Safety and Health Administration (OSHA) compliance, while Plaintiff offers a broader array of services including compliance with the National Environmental Policy Act (NEPA).[3] As OSHA and NEPA are both federal regulations, public agencies may be accountable to both sources of regulation, creating significant overlap between Plaintiff's and Defendant's businesses. Public agencies have already experienced actual confusion as a result, as shown by an email from a CalTrans agent to Plaintiff, asking Plaintiff about a business certification belonging to Defendant and attaching a California Department of General Services report for Defendant. [Decl. Tamara S. Ching. ¶¶ 3-10; Decl. Gary Eastman (Dkt. 14-1), Ex. 3.] CalTrans had already been a significant client of Plaintiff, and the above-mentioned email shows the danger of CalTrans accidentally transferring its business to Defendant. *Id.* This evidence of actual confusion exemplifies the type of harm that trademark infringement laws are designed to prevent. Both Plaintiff's and Defendant's businesses offer services in the field of federal environmental and safety regulation. Someone seeking Defendant's services could reasonably believe that Defendant's services are within the scope of Plaintiff's multi-purpose business. Therefore, this second *Sleekcraft* factor favors Plaintiff.

In addition to these two *Sleekcraft* factors (similarity of the marks and relatedness of the services), Plaintiff's Opposition discussed two additional factors that favor Plaintiff: the strength of the plaintiff's mark and the relatedness of trade channels utilized by the parties. [Dkt. 7-1, at 8–9.] The combined strength of all four *Sleekcraft* factors is enough to show a likelihood of confusion. Compare

---

[3] See Plaintiff's website, www.helixepi.com/services/ceqanepa-compliance-2/; see Defendant's website www.helixenvironmental.com/.

Reply to Defendant's Opposition to Plaintiff's Motion for Entry of Default Judgment
18-CV-02000-AJB-NLS

1 *Dreamwerks*, 142 F.3d at 1130 (adjudicating likelihood of confusion based on only three *Sleekcraft* factors, including similarity of the marks and relatedness of the services).

Once trademark infringement has been established, it is fairly easy to also establish the elements of unfair competition and cybersquatting. Cybersquatting simply requires the additional element of bad-faith. 15 U.S.C. § 1125(d)(1)(a)(i). As Plaintiff alleged in its Complaint and again in its Motion for Entry of Default Judgment, bad-faith is shown by Defendant's undisputed knowledge of the existence of Plaintiff's mark, coupled with Defendant's adamant refusal to stop using the infringing mark to this point of forcing default proceedings. [Complaint, ¶ 31; Dkt. 7-1, at 12.] Refusal to discontinue infringing conduct after being put on notice of the conduct's unlawfulness is evidence of bad faith. *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1106 (S.D. Cal. 2012). Thus, this Court should decide that all of Plaintiff's claims warrant default judgment.

### 2. *Eitel factor 5: Possibility of Dispute Over Material Facts*

As to *Eitel* factor 5, Defendant has not disputed any of the material facts underlying Plaintiffs assertions: the "Helix Environmental" trademarks being used by the two companies; the context of their usage, including in the companies' respective domain names; the services rendered by the two companies; the existence of Plaintiff's trademark registration; and Defendant's awareness of the existence of Plaintiff's mark. Rather, Defendant argues that there is a possibility of a dispute of material facts because "likelihood of confusion is an ultimate question of fact that is vigorously disputed in litigation after intensive fact and expert discovery." [Dkt. 12, at 4.] Defendant, citing *National Photo Group, LLC v. Pier Corporation*, 2014 U.S. Dist. LEXIS 195663 (C.D. Cal. Mar. 10, 2014), implies that Defendant has automatically disputed material facts simply by moving to set aside default and requesting leave to file an answer. [Dkt. 12, at 7.] But all *National Photo Group* held was that the absence of a motion to set aside

1 default or any effort to respond to the Complaint reduces the possibility of a
2 dispute over material facts.  *Nat'l Photo Grp., LLC v. Pier Corp.*, 2014 U.S. Dist.
3 LEXIS 195663, at *6 (C.D. Cal. Mar. 10, 2014).  It did not suggest that a motion
4 to set aside default or a proposed answer bends this *Eitel* factor in the defendant's
5 favor.  Where, like here, the facts show both Plaintiff's ownership of a valid
6 trademark and Defendant's use of a near-identical mark to advertise and offer
7 related services, this Court may conclude that likelihood of confusion is not
8 disputed.  See, e.g., *Am. Tire Distributors v. Am. Tire Corp.*, 2009 WL 10672268,
9 No. cv 08-02971, at *11 (C.D. Cal. June 10, 2009) (holding that likelihood of
10 confusion was not disputed even though the defendant had filed a motion to set
11 aside default).  Plaintiff's factual allegations, taken to be true, reveal not only
12 likely but actual confusion. Between the similar marks and existence of actual
13 confusion, an attempt by Defendant to deny a likelihood of confusion cannot
14 possibly raise a genuine issue of fact, and *Eitel* factor 5 thus favors Plaintiff.

### C. The Admissions in Defendant's Proposed Answer

Relevant to *Eitel* factors 5 (the possibility of a dispute concerning material facts) and 9 (the policy favoring decisions on the merits), Defendant's proposed answer is insufficient to avoid judgment on the pleadings in favor of Plaintiff. The facts relevant to a finding of trademark infringement are undisputed in the proposed answer, and no basis or facts are provided to suggest that any of the affirmative defenses are applicable.  In particular, the proposed answer admits that Plaintiff is the owner of a federal registration for the mark "HELIX ENVIRONMENTAL PLANNING" [Dkt. 9-3, ¶ 22], and that Defendant is using the name HELIX ENVIRONMENTAL and the domain name www.helixenvironmental.com in connection with environmental services throughout southern California [Dkt. 9-3, ¶¶ 23-26].[4] As discussed above and in

---

[4] Plaintiff notes that in the proposed answer, Defendant also "admits" to something never alleged in the complaint – that Plaintiff allegedly "did not communicate with Defendant

the Points and Authorities in Support of Plaintiff's Motion for Entry of Default Judgment [Dkt. 7], this alone is sufficient for a finding of trademark infringement.

Since judgment in favor of Plaintiff would be appropriate even if Defendant's proposed answer were filed, Plaintiff's Motion for Entry of Default Judgment should be granted.

### III.   CONCLUSION

Defendant's Opposition suffered several critical deficiencies.  Factually, with respect to the dealings between the parties leading to the Clerk's entry of default judgment, Plaintiff did not mislead or attempt to trick Defendant in any way.  Plaintiff simply sought Defendant's cooperation in either discontinuing the trademark infringement or participating in the judicial proceedings.  When it became clear that Defendant would do neither of these things, Plaintiff's only option was to initiate default proceedings.  Plaintiff has made true, undisputed factual allegations demonstrating that Plaintiff is entitled to relief for trademark infringement, unfair competition, and cybersquatting.  Defendant's proposed answer admits sufficient allegations to support judgment in favor of Plaintiff. This Court should thus grant Plaintiff's Motion for Entry of Default Judgment and award Plaintiff its requested remedies.

Respectfully submitted,

Dated: February 26, 2019

Eastman & McCartney LLP

By:   /s/  Gary L. Eastman
       Gary L. Eastman, Esq.
       Attorney for Plaintiff

---

regarding its alleged trademark rights prior to filing this action" – and, in doing so, knowingly lied to this Court. [Dkt. 9-3, ¶ 28; see Dkt. 14-2, Exhibits 1-2, containing correspondence from Plaintiff to Defendant, and a reply from Defendant's counsel in September 2017, nearly a year before the complaint was filed].

## CERTIFICATE OF SERVICE

I, the undersigned certify and declare as follows:

I am over the age of eighteen years and not a party to this action.  My business address is 401 West A Street, Suite 1785, San Diego, California, 92101, which is located in the county where the service described below took place.

On February 26, 2019, at my place of business in San Diego, California, I served a copy of the following document:

**REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT**

The undersigned hereby certifies that he caused a copy of the foregoing documents to be filed with the clerk of the U.S. District Court, Southern District of California, using the CM/ECF filing system, and a copy will be electronically mailed to the following recipients via ECF electronic service:

Chris Arledge, Esq.
One LLP
4000 MacArthur Blvd, East Tower Ste. 500
Newport Beach, CA 92660

Attorney for Helix Environmental and Strategic Solutions

I certify and declare under penalty of perjury under the laws of the United States of American and the State of California that the foregoing is true and correct.

Executed on February 26, 2019, in San Diego, California.

By:       /s/ Gary Eastman
                Gary Eastman