Christopher W. Arledge (Bar No. 200767)
Email: carledge@onellp.com
Jenny S. Kim (Bar No. 282562)
Email: jkim@onellp.com
**ONE LLP**
4000 MacArthur Blvd.
East Tower, Suite 500
Newport Beach, CA 92660
Telephone:  (949) 502-2870
Facsimile:   (949) 258-5081

Attorneys for Defendant,
Helix Environmental and Strategic Solutions

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELIX ENVIRONMENTAL PLANNING, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>HELIX ENVIRONMENTAL AND STRATEGIC SOLUTIONS, a California corporation,<br><br>Defendant. | Case No. 18-cv-02000-AJB-NLS<br><br>**REPLY IN SUPPORT OF DEFENDANT HELIX ENVIRONMENTAL AND STRATEGIC SOLUTIONS' MOTION TO SET ASIDE DEFAULT PURSUANT TO FED. R. CIV. P. 55(c)**<br><br>Date:        May 30, 2019<br>Time:       2:00 p.m.<br>Courtroom: 4A |

18-cv-02000-AJB-NLS

## I. INTRODUCTION

Plaintiff's Opposition (Dkt. No. 14) to Defendant's Motion to set aside default is a house of cards built on one shaky foundation: that Defendant will inevitably lose the case on the merits. But once that central assumption is regarded as less than self-evident, Plaintiff has no basis for overriding the strong policy favoring adjudication on the merits. The entire premise of the Opposition is that Defendant's actions constitute infringement; that Plaintiff is so gravely harmed by the alleged infringement that any "delay" caused by litigation is prejudicial enough to bypass due process; and that Plaintiff's alleged harm was so obvious to Defendant that Defendant knew or should have known that Plaintiff had no intention of negotiating a settlement, despite its express invitation to negotiate a settlement. All three assumptions are patently false. Defendant's Motion should be granted and default should be set aside without awarding any sanctions to Plaintiff.

## II. ARGUMENT

### A.  Material Facts Are in Dispute Regarding Infringement

Plaintiff seeks a judgment against Defendant pursuant to a default on the theory that the merits of the case are so clear that litigation is unnecessary:

> Plaintiff Helix filed this action because Defendant has sold services identical or similar to Helix's services using Helix's service mark. . . . Defendant uses the deceptively similar name 'Helix Environmental and Strategic Solutions' to advertise, market, offer, and sell environmental consulting services that are similar or identical to Plaintiff's services.

(Opp. 1 (citations omitted).) But a default judgment is by its nature not an adjudication on the merits, and therefore is disfavored. *See United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) ("[J]udgment by default is a ***drastic step appropriate only in extreme circumstances***; a case should, whenever possible, be decided on the merits." (quoting *Falk v. Allen,* 739 F.2d 461, 463 (9th Cir. 1984); emphasis added). Nothing in Plaintiff's Opposition indicates that these are such exceptional circumstances

1  calling for the drastic step of judgment by default. At most, Plaintiff repeatedly
2  makes the one argument that infringement by Defendant is established beyond
3  dispute and must be stopped. For example, Plaintiff argues that "the only alternative
4  to litigation was for Defendant to stop using Plaintiff's trademark" (Opp. 9)—
5  assuming without proving not only the likelihood of confusion, but also the
6  appropriate remedy. Plaintiff admits that it rejected Defendant's offers "to alleviate
7  consumer confusion" (Opp. 2), finding justification in its own speculative
8  assessment that (1) the asserted mark is enforceable, and (2) customers are likely to
9  be confused. (*See* Opp. 10-12.)
10      But far from proving that Defendant has no meritorious defenses, Plaintiff's
11 extended argument about the validity of its asserted mark and the likelihood of
12 confusion proves that there are several questions of material fact that should be
13 litigated on the merits and that are inappropriate for a resolution by default. Among
14 other things, Plaintiff relies on evidence from websites that are not even
15 incorporated by reference in the Complaint. Thus, even if all the allegations in the
16 Complaint were deemed to be true, Defendant would still have legitimate defenses
17 that validity and infringement cannot be proven; and to the extent Plaintiff's claims
18 are not dismissed outright, it is clear that any substantive adjudication will require
19 the factfinder to consider evidence and legal theories outside the pleadings.
20      The deficiencies of Plaintiff's method are underscored by the Opposition's
21 many self-serving observations and opinions that, if they are to be established as
22 facts at all, will necessarily depend on fact and expert testimony, as well as other
23 evidence not before the Court, including the following:
24  - "'Helix' is not *primarily* geographically descriptive of Plaintiff's services."
25    (Opp. 10.)
26  - "San Diego's Mount Helix neighborhood is not the only, or most obvious,
27    connotation of the term 'Helix'—'Helix' could also refer to the double-helix
28    shape of DNA, or have a number of other scientific meanings." (*Id.*)

- "Nor would a reasonable consumer believe that Plaintiff's environmental consulting services derive specifically from Mount Helix . . . ." (Opp. 11.)
- "Plaintiff and Defendant are not in entirely different industries." (Opp. 12.)
- "[J]ust because some of Plaintiff's clients may be sophisticated does not eliminate the probability of confusion." (*Id.*)
- "Defendant's less sophisticated clients could mistakenly contact Plaintiff." (*Id.*)

Thus, the raw speculations propping up the Opposition make it abundantly clear that Defendant's defenses have merit and require the parties to litigate many disputed material facts, which cannot be resolved on a procedural sleight of hand.

### B. Plaintiff Is Not Prejudiced by Litigation

Once Plaintiff's speculations and assumptions about infringement are disregarded, its claims about prejudice likewise crumble. Plaintiff opines that infringement alone, though unproven, is prejudicial: "There is a danger of prejudice to Plaintiff if its entry of default is set aside. When a trademark is infringed, the harm to the Plaintiff is ongoing because consumers will continue to confuse the Plaintiff's and Defendant's brands until the Defendant discontinues the unauthorized trademark use." (Opp. 5.)

Plaintiff's logic is flawed, first because it takes for granted that Defendant does infringe, a question that is in dispute. Second, Plaintiff cites not one case that holds that any party is prejudiced by litigating the case on the merits. It cannot, because the opposite is true. *See TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001) (overruled on other grounds) ("It should be obvious why merely being forced to litigate on the merits cannot be considered prejudicial for purposes of lifting a default judgment.").

Plaintiff cites only inapposite authority relating to a preliminary injunction, a standard which Plaintiff has not even attempted to meet. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (holding that a plaintiff must

demonstrate (i) it has suffered an irreparable injury; (ii) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (iii) that considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (iv) the public interest would not be disserved by a permanent injunction). (*See* Opp. 5-6.) Moreover, Plaintiff has made clear that it will not attempt to show why monetary relief is or is not adequate, as its motion for default judgment specifically declined to discuss damages. (*See* Dkt. No. 7.) Thus, Plaintiff's cited standard for prejudice in the context of obtaining a preliminary injunction has nothing to do with the relevant facts. Plaintiff's case law only supports the irrelevant proposition that infringement, ***if proven*** or likely to be proven, may be harmful, such that ***when combined with other factors*** it may support injunctive relief. It does not support the broad proposition proffered by Plaintiff, that unproven acts of alleged infringement constitute prejudice sufficient to dispense with an adjudication on the merits.

Plaintiff's claims of prejudice from delay is likewise flawed. Plaintiff argues that "Defendant's failure to respond to the Complaint shows Defendant's prerogative to avoid the situation for as long as possible, without offering a meaningful solution, while the Plaintiff's harms continue to accrue." (Opp. 13.) But Plaintiff's assertion is belied by its own admissions. Plaintiff admits that "Defendant has previously made ***good-faith attempts to negotiate*** by offering to add disclaimers to its website and offering to stop using the standalone phrase 'Helix Environmental.'" (Opp. 7 (emphasis added).) Thus, Defendant ***has offered meaningful solutions***. Plaintiff may have exercised its prerogative to reject them, and in so doing, to allow its alleged harm to continue to accrue; but Defendant did not attempt to avoid the "situation" of either litigation or negotiated settlement.

While Plaintiff acknowledges "[t]he relatively short length of the Defendant's delay," Plaintiff nevertheless urges that it "should not preclude entry of default judgment" because it "does not change Defendant's pattern of evading the lawsuit."

- 4 -                                          18-cv-02000-AJB-NLS

(Opp. 6.) This is a wild distortion. Not only does Plaintiff offer no support for the claim that an admittedly short delay justifies denying a motion to set aside default, but it also offers no basis for characterizing Defendant's actions as a "pattern of evading the lawsuit." Defendant has been engaged in the lawsuit from the time it waived service to the time it filed its motion to set aside default. Plaintiff is the one that evaded Defendant's attempts to communicate. It failed to confirm or deny that the settlement negotiations had ended by December 24, 2018, when Defendant requested a renewal of the existing extension pending settlement negotiations at a time when Plaintiff was considering Defendant's settlement offer, but had not yet made a counteroffer. (Arledge Decl.[1] ¶ 13.) It did not respond to Defendant's phone calls and emails on January 18 and 24, 2019, and it refused to stipulate to set aside default on January 30, 2019. (Arledge Decl. ¶¶ 16-21 & Ex. 2, at 1.) Defendant did not evade Plaintiff or the lawsuit. Defendant was not able to communicate with Plaintiff, despite its best efforts to ascertain the status of the lawsuit, because Plaintiff engineered that result. If Plaintiff suffered any prejudice from the timing of procedural matters in the litigation, it was due to Plaintiff's purposeful tactics.

### C. Plaintiff, Not Defendant, Engaged in Bad Faith Tactics

#### 1. Plaintiff Admits to a Bait-and-Switch in Its Settlement Negotiations

Rather than address its own purposeful and bad faith tactics orchestrated to force a default and avoid a full and fair adversarial process, Plaintiff projects a fictional evil motive to Defendant in engaging in settlement negotiations: "Defendant's repeated requests to extend or continue negotiations were just stall tactics; bad-faith efforts to continue its willful infringing activities while capitalizing on Plaintiff's goodwill, and avoid a lawsuit without having to abide by the laws prohibiting trademark infringement." (Opp. 2.) Plaintiff fundamentally

---

[1] Dkt. No. 9-2.

misunderstands the meaning of a settlement negotiation if it seriously contends that seeking a resolution other than total victory for the other side is a bad faith stall tactic. Indeed, Plaintiff betrays that its understanding of the term "settlement" is not its ordinary meaning: "It was not an absolute promise to resolve the matter out of court, but ***rather an incentive for Defendant to agree to stop using Plaintiff's mark so that Plaintiff could drop the lawsuit***." (Opp. 4 (emphasis added).)

Plaintiff thus admits that instead of a genuine offer for settlement, Plaintiff held out the false promise of compromise as a strong-arm tactic to induce Defendant voluntarily to give Plaintiff everything it would have gotten through a litigated judgment. In other words, while Defendant believed that the parties were negotiating a settlement—relying on Plaintiff's express invitation to do just that (*see* Arledge Decl. Ex. 2, at 5)—Plaintiff understood that the parties were stipulating to a consent judgment. Perhaps it was obvious to Plaintiff that the parties would never reach a negotiated settlement, as Plaintiff alone knew that it would not accept any compromise; but that fact was never clear to Defendant before January 30, 2019.

The most charitable interpretation of Plaintiff's admission that it was seeking a consent judgment under the misleading guise of a compromise is that Plaintiff believed its own extrinsic fraud. But even if Plaintiff and its counsel held a sincere belief that what they called "settlement" actually referred to a total and voluntary injunction by Defendant, it does not prove that Defendant was unjustified in relying on Plaintiff's false promise of a compromise in delaying its appearance in the case. Defendant's misunderstanding of Plaintiff's intent was at least excusable neglect, as Plaintiff used every day English words such as "settlement" with a special meaning Defendant could not have been privy to.

### 2. Defendant's Post-Filing Conduct Was Not Culpable

Moreover, though Plaintiff makes much ado about the delay in litigation after the Complaint was filed, in truth, Plaintiff directly authorized most of the delay and contributed to or caused the rest. Plaintiff requested the original 60-day extension to

December 24, 2018; it evaded Defendant's attempts to communicate from December 24, 2018, to January 29, 2019; and it confirmed only on January 30, 2019, that it was moving forward with litigation. (Arledge Decl. Exs. 2, 4, 5 & ¶¶ 16-21.) Plaintiff can hardly claim that Defendants engaged in bad faith tactics for taking eight days between January 30 and February 7, 2019, to prepare its Motion, when Plaintiff directly and indirectly delayed the lawsuit for 97 days between October 25, 2018 and January 30, 2019.

Plaintiff relies on *Franchise Holding II, LLC. v. Huntington Restaurants Group, Inc.*, 375 F.3d 922 (9th Cir. 2004), to argue that Defendant's conduct was culpable, but the facts in that case are distinguishable. First, the defaulting defendant in *Franchise Holding II* did not make its first appearance until **eleven months** after the clerk entered default. *See Id.* at 925. Here, Defendant made its first appearance twenty days after the clerk entered default, twelve of which were stymied by Plaintiff's refusal to answer Defendant's phone calls and emails. Second, in *Franchise Holding II*, the plaintiff "explicitly warned [defendant] that negotiations had broken down and that it was proceeding with litigation" before it requested default. *Id.* at 926 (9th Cir. 2004). Here, Plaintiff continued to represent that "[i]t remains our strong hope that protracted litigation is not required" as late as January 8, 2019. (Arledge Decl. Ex. 3.) Plaintiff did not explicitly warn that it was proceeding with litigation until January 30, 2019, after it had requested, and after the clerk had entered, default. (Arledge Decl. Ex. 1, at 1.)

Plaintiff attacks a straw man in asserting that "even if Defendant mistakenly believed that its hope of achieving a future settlement excused it from responding to the Complaint, 'inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute "excusable" neglect.'" (Opp. 7-8 (citation omitted).) At no point did Defendant attribute the default to a mistake about the rules. Defendant attributes the default to its mistake about status of parties' settlement discussions, a mistake which Plaintiff actively invited "by fraud or deception

practised on [Defendant] by [its] opponent, as by keeping [it] away from court [or] *a false promise of a compromise* . . . " *United States v. Throckmorton*, 98 U.S. 61, 65-66 (1878) (emphasis added). Indeed, a default could not have been entered merely as an operation of the rules, or a mistake regarding the same, as default is not automatic upon the defendant's missing a filing deadline. Rather, default must be requested by the plaintiff before the clerk is authorized to enter it. *See* Fed. R. Civ. P. 55(a). The Local Rules further provide for **automatic dismissal of the default** if the plaintiff does not take affirmative steps. L.R. 55.1 ("If plaintiff(s) fail(s) to move for default judgment within thirty (30) days of the entry of a default, the clerk will prepare, with notice, an order to show cause why the complaint against the defaulted party should not be dismissed."). Thus, without Defendant's reliance on Plaintiff's misleading representations that default would be held in abeyance pending settlement negotiations, default could not have been entered.

Plaintiff argues that "Defendant acted in bad faith by purposefully failing to respond to the Complaint until default was entered" because "attempted negotiations had been unproductive, and had reached an impasse[.]" (Opp. 8.) But Plaintiff cites no rule that negotiating a settlement past a filing deadline is bad faith. On the contrary, the Supreme Court has held that missing a filing deadline is excusable neglect. *See Pioneer Inv. Serv. v. Brunswick Assocs.*, 507 U.S. 390, 394 (1993).

### 3. If Relevant for Any Purpose, Plaintiff's Evidence of Prefiling Communications Further Proves Plaintiff's Bad Faith

Finally, Plaintiff attempts to argue that Defendants acted in bad faith by citing myriad irrelevant communications that occurred before the Complaint was filed, and before Defendant had any obligation to respond to a complaint.[2] To the extent these communications have any purpose, they appear to be marshaled to support the inference that because "Plaintiff never wavered from its position that Defendant was

---

[2] *See* Decl. Elizabeth Donovan.

infringing Plaintiff's trademark, Defendant could not have been caught by surprise when the negotiations failed." (Opp. 4.)

If Plaintiffs are correct that negotiations failed because Plaintiff never wavered from its position, then *ab initio* its request for a compromise was a misrepresentation. Plaintiff never had any intent to negotiate, a fact of which Defendant could not have been aware. Plaintiff acknowledges that Defendant acted in good faith. (See Opp. 7 ("Defendant has previously made good-faith attempts to negotiate by offering to add disclaimers to its website and offering to stop using the standalone phrase 'Helix Environmental.'").) Yet, inexplicably, it concludes that the adverse consequences to these good faith overtures were within Defendant's control. Short of commandeering Plaintiff, there was nothing Defendant could have done control Plaintiff's unreasonable rejection of settlement. The prefiling communications demonstrate Plaintiff's bad faith, not Defendant's.

### D. Sanctions Are Unwarranted

Plaintiff requests sanctions reimbursing it for the "preparation and filing of the Request for Entry of Clerk's Default, its Motion for Entry of Default Judgment, and defending Defendant's Motion to Set Aside Default." (Opp. 13.) The requested sanctions are unwarranted, at least because Defendant offered to ameliorate these costs and Plaintiff refused. Defendant requested that Plaintiff stipulate to set aside the default. (Arledge Decl. Ex. 2, at 1-2.) Plaintiff had no reasonable basis to oppose the request, especially in light of the strong policy favoring adjudication on the merits; and it yet voluntarily assumed the unnecessary cost of engaging in expensive motion practice. (*Id.*, at 1.) Defendant offered to stipulate to a briefing schedule that would have allowed the parties to defer briefing the motion for default judgment until after the potentially mooting Motion to set aside default was decided. (Declaration of Jenny Kim ¶ 2.) Plaintiff again refused, willingly increasing the time and costs to itself and the Court, so as **not** to brief and argue the motions in a common-sense order. (*Id.*, at ¶ 3.)

The only procedure that Defendant did not specifically offer a solution to was filing the request for entry of default. But, as stated above, Defendant did not understand that settlement negotiation had ended until January 30, 2019, after the default was entered. Moreover, the fees associated with requesting entry of default is more than offset by the fees that Plaintiff forced Defendant to incur by unreasonably withholding its stipulation to routine procedural matters. Where plaintiffs unreasonably refuse to stipulate to setting aside defaults and drive up their own litigation costs with unnecessary motion practice, courts have denied their requests for sanctions. *See, e.g.*, *Anderson v. The Hain Celestial Grp., Inc.*, 2014 WL 2967603, at *6 (C.D. Cal. July 1, 2014) ("[S]anctions are not appropriate where there is no prejudice to be remedied. . . . [Plaintiff] complicated the default proceedings by refusing to voluntarily set aside entry of default, thus causing both parties to incur unnecessary costs."); *Starbuzz Tobacco, Inc. v. Abdallah*, 2011 WL 13216984, at *10 n.53 (C.D. Cal. Aug. 1, 2011) ("While Starbuzz has undoubtedly incurred expenses as a result of opposing this motion, Abdallah offered Starbuzz an opportunity to avoid incurring such costs by stipulating to set aside the entry of default.")

### III. CONCLUSION

For the foregoing reasons, and for the reasons stated in the Motion, Defendant respectfully requests that the Court set aside the default entered against it.

Dated:  February 28, 2019         **ONE LLP**

By: /s/ Jenny S. Kim
    Christopher W. Arledge
    Jenny S. Kim
    Attorneys for Defendant,
    Helix Environmental and Strategic
    Solutions

# CERTIFICATE OF SERVICE

I certify that on February 28, 2019, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to the CM/ECF participant(s) noted below:

| | |
|---|---|
| Gary L. Eastman<br>EASTMAN & MCCARTNEY, LLP<br>401 West A Street, Suite 1785<br>San Diego, CA 92101<br>Email: gary@eastmanmccartney.com<br><br>*Attorneys for Plaintiff,*<br>*Helix Environmental Planning, Inc.* | Christopher W. Arledge<br>ONE LLP<br>4000 MacArthur Blvd.<br>East Tower, Suite 500<br>Newport Beach, CA 92660<br>Email: carledge@onellp.com<br><br>*Attorney for Defendant Helix*<br>*Environmental and Strategic Solutions* |

                                                 /s/ Jenny S. Kim
                                                 Jenny S. Kim