UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELIX ENVIRONMENTAL PLANNING, INC., a California corporation,<br><br>                                  Plaintiff,<br><br>v.<br><br>HELIX ENVIRONMENTAL AND STRATEGIC SOLUTIONS, a California corporation; IVAN DEAN MYERS, and DOES 1-10,<br><br>                                  Defendants. | Case No.: 3:18-cv-2000-AJB-AHG<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (Doc. No. 33)** |

Currently pending before the Court is Plaintiff Helix Environmental Planning, Inc.'s ("Plaintiff") motion for preliminary injunction. (Doc. No. 33.) Defendants Helix Environmental and Strategic Solutions and Ivan Dean Myers ("Defendants") opposed, and Plaintiff replied. (Doc. Nos. 37–38.) For the reasons set forth below, the Court **DENIES** Plaintiff's motion for preliminary injunction.

**I.   BACKGROUND**

Plaintiff brings this action against Defendants for trademark infringement, cybersquatting, unfair competition, and violation of California common law. (Doc. No. 33-1 at 7.) Based in San Diego, California, Plaintiff is a company that specializes in providing environmental consulting services to private and public clients. (First Amended Complaint

("FAC") ¶ 9.) The business primarily focuses on advising companies and individuals on issues of environmental impact, conservation, preservation and protection, and other environmental services. (*Id.* ¶ 10.)

On October 7, 1991, Plaintiff allegedly began using the service mark "Helix Environmental Planning, Inc." in connection with its services. (*Id.*) On January 11, 1999, Plaintiff registered the website domain name, www.helixepi.com. (*Id.* ¶ 11.) From as early as 2002, Plaintiff asserts it began using "Helix Environmental" as an abbreviated service mark. (*Id.* ¶ 12.) On June 19, 2018, Plaintiff received a federal registration for "Helix Environmental Planning, Inc." (*Id.* ¶ 24.) Plaintiff's trademark is registered on the Principal Register. (Doc. No. 33-1 at 24.)

Defendant Helix Environmental and Strategic Solutions, on the other hand, was founded in 2016 in Los Angeles, California. (FAC ¶ 28.) Defendant is a small business operating as an industrial hygiene company. (Doc. No. 37 at 18.) Defendant evaluates indoor air quality and performs environmental surveys for lead, asbestos, mold, hazardous materials, and worksite chemicals exposure. (*Id.*) Defendants' domain name is purportedly www.helixenvironmental.com, although the website has since been deactivated. (Doc. No. 33-1 at 20.)

## II. PROCEDURAL HISTORY

On August 27, 2018, Plaintiff filed its initial complaint in this Court alleging Defendants were infringing on Plaintiff's service mark. (Doc. No. 1.) The First Amended Complaint was filed on July 30, 2019. (Doc. No. 24.) Plaintiff then filed its motion for preliminary injunction on October 15, 2019. (Doc. No. 33.) Defendants opposed the motion for preliminary injunction, and Plaintiff replied. (Doc. Nos. 37–38.) The Court heard Plaintiff's motion for preliminary injunction on January 23, 2020. This order follows.

## III. LEGAL STANDARD

A party seeking a preliminary injunction must fulfill one of two standards, described by the Ninth Circuit as the "traditional" and "alternative" standards. *See Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987). Under the traditional standard, a court may issue

preliminary relief if it finds: (1) the moving party will probably prevail on the merits; (2) the moving party will suffer irreparable injury if the relief is denied; (3) the balance of the hardships favor the moving party; and (4) the public interest favors granting relief. *Id.*

Under the alternative standard, the moving party may meet its burden by demonstrating either: (1) a combination of probable success on the merits *and* the possibility of irreparable injury; *or* (2) that serious questions exist *and* the balance of hardships tips sharply in its favor. *See id.* This latter formulation represents two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. *See Oakland Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985).

A preliminary injunction can be either prohibitory, which means it "preserves the status quo pending a determination of the action on the merits," or mandatory, which means it "orders a responsible party to take action." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79 (9th Cir. 2009) (internal quotations omitted). "A mandatory injunction goes well beyond simply maintaining the status quo and is particularly disfavored. In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Id.* at 879 (internal quotations and citations omitted).

## IV. DISCUSSION

Plaintiff seeks preliminary injunctive relief against Defendants to preclude Defendants from using "Helix Environmental" in its trademark. Plaintiff contends Defendants' mark is confusingly similar to Plaintiff's registered trademark of "Helix Environmental Planning, Inc." (Doc. No. 33-1 at 6.) The Court will proceed to review each element required for a preliminary injunction to issue.

### A. Likelihood of Success on the Merits

In order to demonstrate that Plaintiff is entitled to a preliminary injunction, Plaintiff must show a probable likelihood of succeeding on the merits on its claims. As such, the

Court will analyze in turn the likelihood of success of its trademark infringement, cybersquatting, and California unfair competition claims.

### 1. Likelihood of Success of Plaintiff's Federal and Common Law Trademark Infringement Claims

Under both the Lanham Act and California law, trademark infringement occurs when two elements are satisfied: (1) the defendant engages in the commercial use of another's registered trademark without the plaintiff's consent; and (2) the defendant's use of the plaintiff's registered mark is likely to cause consumer confusion. *See* 15 U.S.C. § 1114(1)(a), (c) ("Any person who shall, without the consent of the registrant, use in commerce any reproduction . . . of a registered mark . . . which is likely to cause consumer confusion . . . shall be liable."); *see also Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1221 (9th Cir. 2012) (holding that a trademark infringement claim under California law is subject to the same standard as a trademark infringement claim under the Lanham Act).

#### a) First Prong: Validity of Plaintiff's Trademark

As relevant to the first prong for the trademark infringement analysis, the parties disagree as to the validity of Plaintiff's mark. Plaintiff asserts its trademark is valid because it is registered on the Principal Register. However, Defendants argue Plaintiff does not own the "Helix Environmental" mark it asserts. (Doc. No. 37 at 10.) Defendants provide three bases for this assertion. First, Defendants contend Plaintiff failed to put forth evidence showing Plaintiff's use of its mark in commerce. Second, Defendants maintain that Plaintiff's mark is subject to invalidation because it is a combination of the "descriptively geographic" term "Helix" and the disclaimed descriptive term "environmental planning." (*Id.* at 11.) And third, Defendants point out that although Plaintiff owns registration for "Helix Environmental Planning, Inc.," it does not own the rights to the abbreviated mark "Helix Environmental." (*Id.*) The Court addresses each argument below.

//
//

### (1) Defendants' Argument That Plaintiff Has Not Provided Evidence of Use in Commerce

"To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir.), as modified, 97 F.3d 1460 (9th Cir. 1996). When proving ownership of a trademark, federal registration of the mark is prima facie evidence that the registrant is the owner of the mark. *See* 15 U.S.C. § 1057(b); 15 U.S.C. § 1115(a). Therefore, the registrant is granted a presumption of ownership, dating to the filing date of the application for federal registration, and the challenger must overcome this presumption by a preponderance of the evidence. *See Vuitton et Fils S.A. v. J. Young Enterprises*, 644 F.2d 769, 775–76 (9th Cir. 1981). The "non-registrant can rebut this presumption by showing that the registrant had not established valid ownership rights in the mark at the time of registration—in other words, if the non-registrant can show that he used the mark in commerce first, then the registration may be invalidated." *Sengoku Works*, 96 F.3d at 1220.

Defendants attack Plaintiff's trademark by arguing that Plaintiff has failed to provide evidence of use of its mark in commerce. However, Defendants' argument is misplaced. Indeed, Defendants seem to be conflating priority of use with Plaintiff's lack of attempt to show ownership. But Plaintiff has met its burden of showing it is the owner of a trademark registration for "Helix Environmental Planning, Inc." (FAC ¶ 24.) The burden is then shifted to Defendants to show that someone else was the first to use the mark in commerce. *See Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 970 n.2 (9th Cir. 2007) ("A defendant may still attack the validity of a plaintiff's registered trademark, such as by showing that someone else first used the mark in commerce or that the registration was flawed."). Defendants fail to meet this burden. The Court finds no evidence offered by Defendants to support their contention that they or someone else used the mark in commerce prior to Plaintiff's use, or that the registration of the trademark was somehow

flawed. Thus, this argument will not invalidate Plaintiff's registered trademark.

### (2) Defendants' Argument That Plaintiff's Trademark is Invalid Because It Is Descriptive

As a second ground for objection, Defendants argue Plaintiff's trademark is invalid as "descriptive" because "Helix" is a geographic term. (Doc. No. 37 at 20.) Specifically, Defendants emphasize Plaintiff is located less than five miles away from Mount Helix, an area in San Diego County. (*Id.*) A descriptive term describes "a person, place, or attribute of a product." *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 872 (9th Cir. 2002). Normally, a trademark will not be registered on the Principal Register if the mark is geographically descriptive. *See* 15 U.S.C. § 1052(3)(2).

Defendants have not shown enough for the Court to conclude that Plaintiff's mark is descriptive. Because the trademark is registered, Plaintiff's trademark is entitled to a presumption of validity. *See Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*, 680 F. Supp. 2d 1107, 1116 (N.D. Cal. 2010). This presumption of validity also confers a presumption that the registered mark has acquired distinctiveness and secondary meaning. *Americana Trading Inc. v. Russ Berrie & Co.*, 966 F.2d 1284, 1287 (9th Cir. 1992); *Sand Hill Advisors*, 680 F. Supp. 2d at 1116 ("As applied to a descriptive mark such as [the plaintiff's], the registration carries a presumption of secondary meaning."). Defendants cite no authority that such a presumption is vitiated per se simply because the trademark may contain a descriptive term. *See Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005). The fact thus remains that "Helix Environmental Planning, Inc." is a registered trademark.

### (3) Defendants' Argument That Plaintiff Does Not Own the Abbreviated "Helix Environmental" Trademark

Lastly, Plaintiff asserts it is entitled to trademark protection for "Helix Environmental," the shortened version of its mark "Helix Environmental Planning, Inc." Defendants counter that no such trademark protection exists for this abbreviated form. Defendants specifically contend Plaintiff is precluded from claiming broad rights in the

"abbreviated" mark "Helix Environmental" because the name is used by third parties, including "Helix Environmental, Inc." (Doc. No. 37 at 21.) This third-party company was allegedly founded in 1988, predating Plaintiff's claimed first use of the "abbreviated" mark in 2002. (*Id.*) The Court rejects the parties' arguments that the Court should focus only on the "Helix Environmental" portion of the parties' trademarks.

"While other jurisdictions have limited the presumption of validity that attaches to registered marks 'to the exact format of the mark as registered,' the Ninth Circuit has yet to apply such a narrow standard." *Auto. Club of S. California v. Auto Club, Ltd.*, No. CV 05-3940 RSWL(CWX), 2007 WL 704892, at *2 (C.D. Cal. Mar. 6, 2007). Under the "anti-dissection rule," trademark infringement claims are analyzed "by viewing the trademark as a whole, as it appears in the marketplace." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1389, 1392 (9th Cir. 1993); 15 U.S.C. § 1052(d) (analyzing a whole "mark" and not portions of a mark). However, "if the dominant portion of both marks is the same, then the marks may be confusingly similar notwithstanding peripheral differences." *Edward Wynn LLC v. U.S.A. Far Ocean Grp.*, No. CV1300293BROCWX, 2013 WL 12139354, at *5 (C.D. Cal. Aug. 28, 2013).

Here, it is undisputed that Plaintiff does not own federal registration for the shortened version of its name, "Helix Environmental." (Doc. No. 38 at 3.) Nevertheless, Plaintiff argues it has used the abbreviated version of "Helix Environmental" in connection with its services since 2002. (*Id.*) But Plaintiff does not provide any evidence—apart from conclusory statements—to support this contention. For example, it is apparent from Plaintiff's website that it uses "Helix Environmental Planning" and "HELIX" to refer to itself. (Doc. No. 37-5 at 4.) However, despite this, the Court is bound by Ninth Circuit law, and ultimately declines to dissect the trade names. Instead, the Court will analyze both trade names in their entirety as they appear in the marketplace. *Official Airline Guides, Inc.*, 6 F.3d at 1389, 1392.

In conclusion, the Court rejects Defendants' attempt to invalidate Plaintiff's trademark registration of "Helix Environmental Planning, Inc." It is clear Plaintiff has a

trademark to "Helix Environmental Planning, Inc." Thus, the Court finds that the first element required for a trademark infringement claim satisfied. The Court will proceed to address the second element for a trademark infringement claim—likelihood to cause consumer confusion.

### b)   Second Prong: Likelihood of Confusion

Courts consider eight factors, commonly referred to as the *Sleekcraft* factors, to determine whether the defendant's use of the plaintiff's registered trademark is likely to cause consumer confusion. These factors are:

> (1) the similarity of the marks; (2) the relatedness or proximity of the two companies' products or services; (3) the strength of the registered mark; (4) the marketing channels used; (5) the degree of care likely to be exercised by the purchaser in selecting goods; (6) the accused infringers' intent in selecting its mark; (7) evidence of actual confusion; and (8) the likelihood of expansion in product lines.

*Interstellar Starship Servs., Ltd., v. Epix, Inc.*, 304 F.3d 936, 942 (9th Cir. 2002) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 346 (9th Cir. 1979)).

### (1)   The Similarity of the Marks

The similarity of the trademarks "has always been considered a critical question in the likelihood of confusion analysis." *Brookfield Comm., Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999). "Obviously, the greater the similarity between the two trademarks at issue, the greater the likelihood of confusion." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000). To assess similarity, courts should consider the two trademarks in their entirety as they appear in the marketplace, judge similarities in terms of appearance, sound, and meaning, and weigh similarities more heavily than differences. *Id.*

Here, Plaintiff's full trademark is "Helix Environmental Planning, Inc." whereas Defendants' full trademark is "Helix Environmental and Strategic Solutions." The obvious similarity is both trademarks share the same first two words, "Helix Environmental." Defendants point to the differences in the marks but "a trademark infringer need not expropriate the entire mark of another to be guilty of an enjoinable offense if the imitation

is of the most salient feature of the mark in question." *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 801 (9th Cir. 1970). Thus, because "Helix Environmental" is arguably the "most salient feature," this factor weighs in favor of Plaintiff.

### (2) The Relatedness or Proximity of the Two Companies' Products or Services

The standard for deciding whether the parties' goods or services are "related" is whether customers are "likely to associate" the two product lines. *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1131 (9th Cir. 1998). Courts must also consider whether the buying public could reasonably conclude that the products came from the same source. *See Sleekcraft*, 599 F.2d at 348 n.10. The more likely the public is to make such an association, the less similarity between the marks is necessary to find a likelihood of confusion; when services are highly similar in nature, less similarity in the marks is required. *Id.*

Plaintiff states both Plaintiff and Defendant are environmental consulting services that advise clients on how to comply with government environmental regulations. (Doc. No. 33-1 at 12.) Defendant, on the other hand, stresses the differences in the two services. Notably, Defendant emphasizes that Defendant is a small business that is paid about $2,500 to $10,000 for its services, whereas Plaintiff is a much larger business with contracts worth millions of dollars. (Doc. No. 37 at 18.) According to Defendants, "Defendant will almost never respond to the same bid solicitations from large public and private entities as Plaintiff." (*Id.*) And unlike Defendant, Plaintiff apparently does not advise OSHA regulation issues, and instead, dabbles in CEQA/NEPA compliance advising. (*Id.*) Overall, while there are differences in the services provided by both parties, the Court concludes that there are enough similarities, and thus, this factor weighs slightly in favor of Plaintiff.

### (3) Strength of the Registered Mark

"The stronger a mark—meaning the more likely it is to be remembered and associated in the public mind with the mark's owner—the greater the protection it is accorded by the trademark laws." *Network Automation, Inc. v. Advanced Sys. Concepts,*

9

*Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011). The strength of a mark is determined by its placement on a continuum of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. *Two Pesos. Inc. v. Taco Cabana. Inc.*, 505 U.S. 763, 768 (1992). Generic terms are those used by the public to refer generally to the product rather than a particular brand of the product. *Id.* Descriptive terms directly describe the quality or features of the product. *Id.* at 769. A suggestive mark conveys an impression of a good but requires the exercise of some imagination and perception to reach a conclusion as to the product's nature. *Sleekcraft*, 599 F.2d at 349. Arbitrary and fanciful marks have no intrinsic connection to the product with which the mark is used; the former consists of words commonly used in the English language, whereas the latter are wholly made-up terms. *Id.* Generic and descriptive marks are weak, while arbitrary and fanciful marks are strong. *Id.* Suggestive marks are presumptively weak, but may be strengthened through actions in the marketplace, such as extensive advertisement leading to wide recognition. *See Brookfield Communs.*, 174 F.3d at 1058.

Here, the Court must examine Plaintiff's registered mark in its entirety. *See Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1389, 1392 (9th Cir. 1993) (holding that district court committed "error" when it "analyzed the strength of [plaintiff's] mark by examining . . . the term 'Travel Planner,' standing alone" where plaintiff alleged that its mark "OAG TRAVEL PLANNER" was infringed by defendants' marks "THE TRAVEL PLANNER USA" and "USA TRAVEL PLANNER"). While Plaintiff argues that its trademark is "suggestive," the Court disagrees and finds that Plaintiff's "Helix Environmental Planning, Inc." trademark is instead descriptive. "Helix" appears to describe, or at least relate to, the Mount Helix area in San Diego, California where Plaintiff is located. And, the rest of the trademark, "Environmental Planning" describes the services Plaintiff provides. As a descriptive mark, the Court concludes that the strength of the mark is weak. This factor thus favors Defendants.

### (4) The Marketing Channels Used

"Convergent marketing channels increase the likelihood of confusion." *Sleekcraft*,

599 F.2d at 353 (finding that confusion is likely due to the fact that both parties advertised in niche markets, including boat shows, specialty retail outlets, and trade magazines). "However, this factor becomes less important when the marketing channel is less obscure." *Network Automation, Inc.*, 638 F.3d at 1151. Where both parties utilize the Internet to market the products at issue, the Ninth Circuit has found this factor carries little weight in the likelihood of confusion calculation. *See Playboy Enterprises v. Netscape Communications*, 354 F.3d 1020, 1028 (9th Cir. 2004).

Here, Plaintiff's position is the both parties advertise through the Internet. (Doc. No. 33-1 at 14.) In opposition, Defendants maintain they do "very little marketing except through the American Industrial Hygiene Association (of which Plaintiff is not a member) and in-person meetings (which Plaintiff has not attended)." (Doc. No. 37 at 18.) Defendants apparently heavily rely on referrals and word-of-mouth to generate new business. (*Id.*) Of particular importance, Defendants emphasize that customers searching for "Helix Environmental" are unlikely to find Defendants because Defendants' www.helixenvironmental.com website has been disabled, and an internet search of "Helix Environmental" "overwhelmingly returns websites that correctly identify Plaintiff." (Doc. No. 37 at 20.) First, the Court agrees with Defendants that using the Internet as a way to advertise is not enough to establish similarity in marketing channels. Indeed, the Ninth Circuit has established that "[g]iven the broad use of the Internet today, the same could be said for countless companies. Thus, this factor merits little weight." *See Playboy*, 354 F.3d at 1028. Secondly, given that Defendants advertise primarily through word-of-mouth, the Court finds that the parties do not use similar marketing channels. Consequently, the Court concludes that this factor favors Defendants.

### (5)   Purchaser Degree of Care

In analyzing the degree of care that a consumer might exercise in purchasing the parties' services or goods, the question is whether a "reasonably prudent consumer" would take the time to distinguish between the two product lines. *See Brookfield,* 174 F.3d at 1060. Where, as here, the relevant consumers are composed of professional, sophisticated

buyers, the buyer can be expected to exercise greater care in his or her purchases. *Sleekcraft*, 599 F.2d at 353. This is such a case. Defendants' services cost between $2,500 to $10,000 while Plaintiff's contracts are worth millions of dollars. (Doc. No. 37 at 18.) Additionally, both parties submit proposals to potential clients in response to requests for quotes, decreasing the likelihood of confusion. (Doc. No. 33-1 at 15.) While purchaser care does not guarantee that there is no likelihood of confusion, the Court does not find that this factor favors Plaintiff. Therefore, given the extra steps necessary to procure the parties' services, and the sophistication of the buyers, this factor favors Defendants.

### (6) The Accused Infringers' Intent in Selecting Its Mark

"When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Sleekcraft*, 599 F.2d at 354. "This factor favors the plaintiff where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark." *Brookfield*, 174 F.3d at 1059. Yet, this "factor is only relevant to the extent that it bears upon the likelihood that consumers will be confused by the alleged infringer's mark (or to the extent that a court wishes to consider it as an equitable consideration)." *Id.* (citing *Sleekcraft*, 599 F.2d at 348 n.10). Therefore, the Ninth Circuit has "emphasized the minimal importance of the intent factor." *GoTo.com*, 202 F.3d at 1208 (declining to consider this factor).

There is scant evidence here of deliberate intent to copy Plaintiff's trademark. Indeed, there is no evidence in the record that Defendants adopted its mark with knowledge of Plaintiff's trademark. Plaintiff argues that intent is established because "Defendants continued infringing long after it learned of Plaintiff's pre-existing trademark in 2017" through Plaintiff's cease and desist letter. (Doc. No. 33-1 at 16.) But this is not enough. "[T]he failure to stop using a mark after receiving a cease and desist letter does not show willful infringement and is not necessarily indicative of bad faith. . . ." *Groupion, LLC v. Groupon, Inc.*, 826 F. Supp. 2d 1156, 1165 (N.D. Cal. 2011). The Court finds that Defendants' failure to stop using their mark after receipt of the cease and desist letter is not

necessarily indicative of any bad faith. To the extent this factor holds any importance, this factor favors Defendants.

### (7)   Evidence of Actual Confusion

Evidence of actual confusion by consumers is strong evidence of likelihood of confusion. *See Americana Trad. Inc. v. Russ Berrie & Co.*, 966 F.2d 1284, 1289 (9th Cir. 1992). In analyzing this factor, courts may consider whether merchants and non-purchasing members of the public, as well as actual consumers, were confused. *Id.*

Here, there is little evidence of actual confusion. Plaintiff states that a manager for Caltrans, one of its clients, emailed Plaintiff to ask if Plaintiff was still "small business certified," even though this certification only applies to Defendants and not Plaintiff. (Doc. No. 33-1 at 14.) This shows actual confusion by even sophisticated public agencies, according to Plaintiff. However, this one instance is the only evidence of alleged actual confusion in the record and is insufficient to establish actual confusion. *See Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 633 (9th Cir. 2005) (holding a single retailer and a single customer insufficient to establish likelihood of confusion based on actual confusion); *cf. Playboy*, 354 F.3d 1020, 1026 (9th Cir. 2004) ("actual confusion among significant numbers of consumers provides strong support for the likelihood of confusion") (footnote reference omitted). This factor favors therefore Defendants.

### (8)   The Likelihood of Expansion in Product Lines

Lastly, "[w]here two companies are direct competitors, this factor is unimportant." *Network Automation*, 638 F.3d at 1153. Courts find this factor irrelevant when it has been determined that the goods or services are similar. *Id.* Because the services provided by Plaintiff and Defendants share enough similarities, the Court does not consider this factor.

\* \* \*

In balancing the *Sleekcraft* factors, the Court holds that Plaintiff has not shown a likelihood of success on the merits as to whether there is a likelihood of confusion. Only two of the seven considered factors favor Plaintiff. Therefore, Plaintiff has not demonstrated it is likely to succeed on the merits of its trademark infringement claim. Nor

has Plaintiff demonstrated serious questions going to the merits. Consequently, the Court cannot issue a preliminary injunction based on this claim.

## 2. Likelihood of Success of Cybersquatting Claim

Neither does the Court find a likelihood of success on the merits on Plaintiff's cybersquatting claim. "[C]ybersquatting occurs when a person other than the trademark holder registers the domain name of a well-known trademark and then attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005) (quoting *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 204 (6th Cir. 2004) (internal quotation marks omitted)). The Anti–Cybersquatting Consumer Protection Act establishes civil liability where a plaintiff proves that "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.'" *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218 (9th Cir. 2010). The statute contains a safe harbor provision, excluding a finding of "bad faith intent" for persons who reasonably believed that use of the domain name was fair use or otherwise lawful. 15 U.S.C. § 1125(d)(1)(B)(ii).

The parties dispute the third element for the cybersquatting claim. Plaintiff argues that Defendants, in bad faith, registered and used a website domain name confusingly similar to Plaintiff's registered trademark. The domain name Plaintiff complains Defendants are holding hostage is www.helixenvironmental.com. By contrast, Plaintiff's website that it is using to do business is www.helixepi.com. Defendants rebut by arguing that "bad faith intent to profit is not established simply where an accused infringer uses the accused website to run a for-profit business." (Doc. No. 37 at 27.)

Congress has enumerated nine nonexclusive factors for courts to consider in determining whether bad faith exists. *See* 15 U.S.C. § 1125(d)(1)(B)(i). "We need not, however, march through the nine factors seriatim because the ACPA itself notes that use

14

of the listed criteria is permissive." *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1202 (9th Cir. 2009) (quoting *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 269 (4th Cir. 2001)). "[I]nstead, the most important grounds for finding bad faith are the unique circumstances of the case. . . ." *Interstellar Starship*, 304 F.3d at 946.

The Court concludes that there is insufficient evidence indicating bad faith. There is no evidence that Defendants intended to hold the domain name hostage or own the website for any purpose other than use in the ordinary course of business. Plaintiff explains that "Defendants' insistence on keeping the domain name in an inactive state represents Defendants' bad-faith desire to 'ransom' the domain name to prevent Plaintiff from controlling its trademarks." (Doc. No. 38 at 8.) But the Court does not agree that disabling a website pending litigation necessarily evidences a bad faith intent to ransom a website. For example, Defendants' intention could have been to disable the website during the pendency of the litigation so as to not contribute to the alleged confusion of the similar marks. *LV Gaming Ventures, LLC v. M Resort Phuket*, No. 211CV01552LDGVCF, 2012 WL 13050871, at *1 (D. Nev. Jan. 31, 2012) ("The court granted the plaintiff's motion for preliminary injunction in open court [], which placed defendants' infringing domain name on hold and lock, and disabled the associated website."). As such, because the Court does not find evidence of bad faith, the Court declines to address the other elements required for a cybersquatting claim. *See Interstellar Starship*, 304 F.3d at 947 ("Without a finding of bad faith, [the] cybersquatting claim necessarily fails.").

### 3. Unfair Competition Under California Business and Professional Code § 17200

Section 17200 defines "unfair competition" to include "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200; *see also Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Because the statute is written in the disjunctive, "it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647 (1996). "By proscribing 'any unlawful' business practice, section

17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable. *Id.* (internal quotations omitted). "An unlawful business practice under [this section] is anything that can properly be called a business practice and that at the same time is forbidden by law." *Morgan v. AT & T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009) (internal quotation omitted). Regarding unfair competition in the context of direct competitors, the California Supreme Court has explained that "any finding of unfairness to competitors under [this section must] be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Cel–Tech Commc'ns*, 20 Cal. 4th at 186–87.

Plaintiff asserts that Defendants' conduct constitutes unfair competition under California law because the trademark infringement is unlawful and in violation of the Lanham Act. (Doc. No. 33-1 at 22.) Specifically, according to Plaintiff, Defendants are engaging in unfair and fraudulent business practices by continuing to exploit Plaintiff's goodwill through continued use of a virtually identical mark. (*Id.*)

The Court holds that Plaintiff is unable to show likelihood of success on the merits for unfair competition in violation of Section 17200. First, Plaintiff cannot show that Defendants' use of the mark is unlawful because Plaintiff has not established a violation of federal or state law. Second, Plaintiff is unable to show that Defendants' use of the mark is unfair because Plaintiff does not adequately address actual or threatened impact on competition. Finally, Plaintiff is unable to establish that Defendants' use of the mark is fraudulent because Plaintiff failed to show that members of the public will likely be confused, as discussed above, much less deceived.

Accordingly, Plaintiff has not demonstrated a likelihood of success on the merits of a Section 17200 claim.

**B.     Irreparable Harm**

The Court next addresses whether irreparable injury will arise in the absence of a preliminary injunction. A plaintiff seeking a preliminary injunction must establish a likelihood of irreparable harm in the absence of preliminary relief. *See Herb Reed*

*Enterprises, LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1242 (9th Cir. 2013). "Those seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm." *Id.* at 21. A court may not rely on "unsupported and conclusory statements regarding harm [a plaintiff] *might* suffer." *Id.* at 19 (internal quotation marks omitted; emphasis in the original). "Evidence of loss of control over business reputation and damage to goodwill constitutes irreparable harm." *Id.* at 1250.

Plaintiff argues irreparable harm is very likely because even though Defendants' domain name is disabled, "the confusingly similar domain name still exists, which is likely to divert consumers looking for Plaintiff to a disabled webpage that consumers would likely associate with Plaintiff." (Doc. No. 33-1 at 23.) Defendants counter Plaintiff only offers unsupported assertions that it will suffer loss of goodwill, and further points out that "the claim of irreparable harm is further undermined by the fact that Plaintiff did not seek a preliminary injunction earlier, though it alleged infringement in September 2017." (Doc. No. 37 at 10.)

The Court agrees with Defendants for a few reasons. First, as Defendants point out, entering the term "Helix Environmental" in a Google search returns an overwhelming amount of results correctly identifying Plaintiff. (Doc. No. 37 at 23–24.) Second, Defendant does very little marketing except through "the American Industrial Hygiene Association (of which Plaintiff is not a member) and in-person meetings (which Plaintiff has not attended)." (Doc. No. 37 at 9 n.2.) The absence of any strong marketing campaigns indicates a lessened likelihood of confusion and irreparable injury. And lastly, the Ninth Circuit has recognized that a plaintiff's "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *See Oakland Tribune, Inc.*, 762 F.2d at 1377. Here, Plaintiff did not file a motion for preliminary injunction until over two years after it was aware of its potential trademark infringement claim.

Accordingly, the Court finds that minimal irreparable harm will arise in the absence of a preliminary injunction.

//

### C. Balance of Hardships

Before issuing a preliminary injunction, courts must weigh "the competing claims of injury and [] consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987). Plaintiff claims it will be harmed because Defendants are infringing on its mark. (Doc. No. 33-1 at 25.) Further, Plaintiff points out Defendants will not be harmed because Defendants have only been in business since 2016. (*Id.*) Defendants, instead argue that an injunction will "effect a total shutdown of the business." (Doc. No.37 at 28.) However, given the lack of evidence suggesting likelihood of confusion or irreparable injury, the balance of hardships is neutral at best.

### D. Public Interest

"The public interest analysis for the issuance of a preliminary injunction requires [district courts] to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011) (citation omitted). "Trademarks protect the public from confusion by accurately indicating the source of a product." *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 715 (9th Cir. 2005). In view of the Court's previous conclusion that Plaintiff has not established a likelihood of confusion or irreparable harm, the Court does not believe that the public interest demands preliminary injunctive relief. Rather, the Court finds that the public interest is best served, at this stage of the proceedings, by allowing Defendants to continue to operate their business with their current mark until further discovery can be conducted.

## V. CONCLUSION

In sum, the Court concludes Plaintiff has not made "a clear showing" that it is entitled to the "extraordinary remedy" of an injunction at this stage of the proceedings. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Based on the foregoing, the Court **DENIES** Plaintiff's motion for a preliminary injunction. (Doc. No. 33.)

**IT IS SO ORDERED.**

Dated: May 20, 2020

*[signature]*
Hon. Anthony J. Battaglia
United States District Judge